# FRED W. THOMAS et ux. v. J. P. NOE et al.
## UNION SUPPLY COMPANY, Inc., v. FRED W. THOM-AS et ux. —301 S. W. (2d) 391.

Eastern Section.   November 20, 1956.

Petition for Certiorari denied by Supreme Court February 8, 1957.

E. Lynn Minter, Kingsport, for appellants.

Clifford E. Sanders, Jackson C. Raulston, Frank K. Moore, Kingsport, for appellees.

HOWARD, J.   The principal question on this appeal is whether an owner who has paid the full contract price which has all been applied to the payment of lien claims is still liable for lien claims up to the amount of the contract price.   The Chancellor held the owner not liable under T. C. A. sec. 64-1120, providing:

> "Lien limited to contract price.—The claims secured by lien for labor done, and materials furnished, shall in no case exceed the amount agreed to be paid by the owner in his contract with the original contractor."

The appellant Union Supply Co., Inc., insists the Chancellor erred in holding that it cannot enforce its lien for the full balance due it of $2,390.59 for materials furnished the contractor and in limiting it to the sum of $726.17 still owing the contractor by the owners, Thomas and wife.

On February 8, 1955, Thomas entered into a contract with J. P. Noe to build a house on Lot 13 of Patrick Henry Heights Addition "in accordance with plans and specifications submitted to the Veterans' Administration, for $9,550.00." The contract expressly stated: "This contract does not include the cost of the lot which was purchased at a cost of $2,000.00 by Fred W. Thomas."

On March 4, 1955, the President of appellant and J. P. Noe addressed a joint letter to the First National Bank of Kingsport agreeing, in consideration of the Bank making a construction loan to Thomas, to complete the house to the extent necessary "for the prompt closing of a permanent loan by John Hancock Mutual Life Insurance Company." The letter recites: "We understand that this company has issued their firm committment to grant such a loan upon completion, in the amount of $11,500.00, at 4½% interest." At the bottom of the letter there appears the following: "Approved by Fred W. Thomas." Thomas admitted signing this notation.

It will be observed that the amount of the loan was to be within $50 of the amount of the contract price plus the cost of the lot and that the above quoted letter makes no reference to the contract price. At the time of the execution of the contract and at the date of the letter, Thomas owed a balance of $2,000 on the lot leaving a balance of $9,500, or $50 less than the contract price for construction costs. The Bank granted a loan and as we understand from time to time during the progress of the work issued checks payable jointly to appellant. Thomas and Noe totalling $8,823.83 which amount has been applied to the claims of laborers and furnishers. Thomas offers to pay into Court the sum of $726.17, being the difference between the contract price of $9,550 and the

amount already paid to lien claimants. Appellant's claim totals $2,390.59 leaving a deficit of more than $1,600.

■ ■ Appellant construes the statute to mean that, even though the owner has discharged lien claims equal to the contract price, he may still be liable for additional lien claims up to the amount of the contract price. We cannot agree. It seems to us the statute was intended to benefit the owner by enabling him to protect himself against double liability. Laborers and furnishers have a means of protecting themselves by investigating the solvency of the contractor or deciding for themselves whether the contract is in such an amount that a deficit will not occur. If construed according to appellant's contention the statute, for all practical purposes, would give no protection to the owner. The only practical result would be to relieve laborers and furnishers of the duty of looking after their own interests and place this burden upon the owner who is often unfamiliar with construction costs. We cannot believe the Legislature intended such an incongruity and no authority is cited to sustain appellant's insistence.

The construction of the statute followed by the Chancellor was clearly implied in Richmond Screw Anchor Co. v. E. W. Minter Co., 156 Tenn. 19, 300 S. W. 574, 583, where the court referred to its previous holding in Richardson v. Lanius, 150 Tenn. 133, 263 S. W. 799, as follows:

"The gist of the holding in Richardson v. Lanius, is to be found in the sentence contained in the opinion: 'The total *liens* could not have exceeded the contract price.' (Italics here.) In that case all the money previously paid by the owner had been paid

by him directly to furnishers of labor and materials who were granted liens by the statute; and the court held no more than the previous voluntary payments by the owner to the holders of liens should be added to the amount of the lien proven by complainant, and if that total exceeded the contract price, then complainant could only enforce his lien in the pro rata amount which would have been awarded him if all of the lien holders had been forced to join him in his suit.''

In Richardson v. Lanius, supra, the court referred to the early case of Cole Manufacturing Co. v. Falls, 90 Tenn. 466, 16 S. W. 1045, holding that one way an owner may fully protect himself is by seeing to it that the subcontractor and materialman are paid as the work progresses. He could not protect himself by doing so, under appellant's construction of the statute.

In Richardson v. Lanius, supra, 150 Tenn. at p. 146, 263 S. W. at p. 803, it was said: ''The total liens could not have exceeded the contract price. Therefore, it is neither equitable nor within the purview of the statutes to say that, because Mrs. Loftin has paid some of these claims that might have been established as liens by notice and suit, so that the balance now owing is less than the contract price, there is but one lien, and that it is less than the contract price. * * * We do not think Mrs. Loftin was compelled to force all claimants to give notice and assert their claims by suit in order to preserve her rights under the statute.''

Other cases in point, in principle, include Traylor v. Sims, 5 Tenn. App. 594; Variety Fire Door Co. v. Hanson-Worden Co., 10 Tenn. App. 254.

It may be that appellant believed the contract price to be $11,500 but the letter to the Bank upon which it relies, as above pointed out, makes no mention of the contract price. Appellant could have ascertained the correct amount by demanding to see the contract. It was not misled as to the contract price by the owner. Appellant's President, Mr. Horsely, testified that he and Thomas agreed on looking over the plans that the house could not be built for $9,500. This would suggest care in furnishing materials and Mr. Horsely himself disbursed the proceeds of the construction loan without deducting for appellant payment of its account.

Since no other lien claims were perfected in time, appellant was held entitled to the entire balance of the unpaid portion of the contract price and we think its recovery was correctly limited to this amount.

Although the assignments are to the effect that the Chancellor should have impressed the property with a lien "in the total sum of Two Thousand Three Hundred *Ninety* and 59/100 Dollars ($2,390.59)'', it is said in the brief recovery should have been allowed according to the formula laid down in Richardson v. Lanius, supra, 150 Tenn. 133, 263 S. W. 799.

We cannot do so for two reasons: First, the case was not tried upon that theory in the Chancery Court but upon the theory that the statute, if properly construed, would subject the property of the owner to an amount equal to the contract price even though the owner had already discharged liens in that amount. The rule is that the Court of Appeals "can only consider such matters as were brought to the attention of the Chancellor, and acted upon or pretermitted by him" and that

where both parties act upon a particular theory of the cause of action or defense, they will not be permitted to depart therefrom on appeal." Clement v. Nichols, 186 Tenn. 235, 209 S. W. (2d) 23; Simpson v. Harper, 21 Tenn. App. 431, 111 S. W. (2d) 882; Human v. Hartsell, 24 Tenn. App. 678, 148 S. W. (2d) 634. Numerous other cases could be cited for the rule.

Secondly, there is no evidence in the record upon which we could work out such apportionment. There is no proof as to the amount of appellant's total charges and, of course, any apportionment would have to apply to the total account and not just to the balance due. Nor is there any accurate proof as to total cost of the job which would also be necessary in working out the amount due appellant on a percentage basis. So far as we can ascertain from the record appellant, under a proper apportionment, might not be entitled to more than the balance of $726.17 still due under the contract.

Lastly, it is a matter of some doubt whether appellant having itself disbursed the proceeds of the construction loan is entitled to the equitable right of apportionment.

Affirmed and remanded with costs of appeal taxed to appellant.

McAmis, P. J., and Hale, J., concurring.