Warren MORAN, Appellant,

v.

CITY OF KNOXVILLE et al., Appellees.

Court of Appeals of Tennessee, Eastern Section.

May 25, 1979.

Certiorari Denied by Supreme Court Oct. 29, 1979.

Richard A. Sedgley, Knoxville, for appellant.

Ellis A. Sharp, Knoxville, for appellees.

## OPINION

SANDERS, Judge.

The Plaintiff-Appellant, Warren Moran, sued the Defendants-Appellees, City of Knoxville, the Knoxville Administrator of Personnel and Civil Service Board and the Fire Chief of the City of Knoxville, alleging he was improperly discharged as a city fireman. In his complaint, as amended, he said: (1) His discharge was based on statements made by a psychiatrist, the exact tenor of which he was not informed; (2) The City refused to permit him to see the report or give him a hearing wherein he could refute the allegations; (3) The action of the City abridged and denied him rights guaranteed by the United States and the State Constitutions; and (4) He had been employed by the City for six months and could not be discharged without a hearing. He asked to be reinstated in his employment and given money damages.

The Defendants denied the material allegations of the complaint and the case was heard before the Chancellor without a jury. The Chancellor found the issues in favor of the Defendants and the Plaintiff has appealed and assigned error.

In 1975 the Plaintiff took an examination for the position of fireman with the City of Knoxville. He passed the examination and was placed on the eligible list. He was not hired at the time because the City did not have sufficient funds to increase its fire department personnel. At a later date he became eligible for employment by the City under the Comprehensive Employment Training Act of the Federal Government, which is called CETA. As pertinent here, under this program the Federal Government furnished funds to governmental agencies to hire unemployed persons for job training, etc. Plaintiff was employed by the City as a trainee Class A fireman under the CETA program.

Before becoming a regular fireman in the fire department it is necessary (1) to pass the examination, which the Plaintiff had done; (2) to pass a physical examination, which Plaintiff did after his employment; (3) to complete a course of training given by the fire department, which the Plaintiff did; and (4) to satisfactorily pass a psychological evaluation conducted by a clinical psychiatrist, which the Plaintiff failed to do.

The Plaintiff had been employed about three months when he was told he had failed the psychological evaluation test. He was advised that because he had failed the test he could not be retained as a fireman, but he would be retained for a while to give him an opportunity to find other employment. He failed to find other employment immediately and he was terminated by the City one or two days before he had been employed six months.

On the trial of the case it was the theory of the Plaintiff that, since the City did not offer him an opportunity to see his psychological evaluation at the time he was informed of its results, his "liberty interest" had not been protected under the due process clause of the Fourteenth Amendment of the Constitution.

Both the Plaintiff and Defendants rely upon the unreported case of the Supreme Court of *Edward Connaster v. City of Knoxville, et al.*, filed June 2, 1976. That

case involved the discharge of certain policemen by the City of Knoxville as a result of psychological evaluation. The Court held, in an opinion by Chief Justice Cooper, that, since the policemen had not been employed for six months under the charter provisions, the City had the right to discharge them without a hearing. In relating to the policemen's "liberty interest", the Court said:

"Although appellants' dismissal without a prior hearing was not itself constitutionally infirm, we must determine whether appellants have established a liberty interest which is entitled to protection under the Due Process Clause of the Fourteenth Amendment. In *Board of Regents v. Roth* [408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548], *supra*, the Supreme Court discussed the concept of liberty in terms of an individual's interest in remaining free from charges which might 'seriously damage his standing and associations in his community' or '(impose) on him a stigma or other disability that (will foreclose) his freedom to take advantage of other employment opportunities.' *Id.* at 573 [92 S.Ct. at 2707]. We find that the reason advanced for appellants' dismissal, psychological evaluations finding them emotionally unfit to serve as policemen, imposed a stigma upon appellants which will affect their future employability as policemen or otherwise. Thus, we hold that appellants have a liberty interest in their future employability which requires due process protection.

"The appropriate remedy in this case, however, is not reinstatement or any other course of action designed to require a reconsideration of their dismissal. *See Board of Regents v. Roth, supra*, at 573 n.12 [92 S.Ct. at 2707]; *Whitney v. Board of Regents*, 355 F.Supp. 321 (E.D.Wis. 1973). The chancellor ordered that appellants be afforded notice of the specific reasons for their discharge by being allowed to inspect the psychological reports and further ordered that they be allowed to file supplemental psychological or psychiatric reports with the City for accumulation in their personnel files. Neither party has appealed from this portion of the chancellor's order. We think that the action ordered by the chancellor will effectively protect appellants' liberty interest in their future employability."

The proof in the case at bar fails to show the Plaintiff ever asked to see the psychological evaluation. However, his attorney was permitted to review it. Also, the Plaintiff had a separate psychological evaluation made. Although it was not placed in his personnel file, it was filed as an exhibit in this record. In passing upon the question of whether or not the Plaintiff's "liberty interest" had been violated, the Chancellor, in his memorandum opinion, said:

"The question then is whether or not the failure to give him a copy of the psychological evaluation constituted a patently arbitrary or discriminatory action in connection with his dismissal, or violated his liberty interest.

"The evaluation was in evidence today, and we note it's Exhibit Ten. Another evaluation in evidence is Exhibit Eleven, and has been provided on behalf of the plaintiff. That evaluation does not reflect unfavorably upon him, and concludes that there are no psychological tests that are validated with respect to performance of an individual as a fireman. This examination in general then is at odds with the examination upon which plaintiff's discharge was based.

"We do not feel that the City has violated his rights in this case. The *Connaster* decision concluded that it is reasonable to allow Mr. Moran, or the claimant in that case to inspect the psychological report, and to file supplemental reports to be accumulated in their personnel file. I don't think initially he really sought to see the report. He was advised that it was negative as far as he was concerned; that is, he had not passed it. It was later shown to his attorney, but he was refused the right to copy it. The *Connaster* case, if read carefully, says 'inspect the report.' It sounds like the City was attempting to carry out the letter of the *Connaster* decision. The

City, through its attorneys, raises no objection to a copy of the report being provided to an employee. The report is here in evidence. Inasmuch as these reports can go to Court and only end up being known and easily copied, we don't think that the *Connaster* decision should be interpreted so narrowly as to prohibit the employee from receiving or making a copy of the report. That seems reasonable, that they should be allowed the report.

"If I recollect the testimony, Mr. Moran was offered the opportunity to place psychological reports in the file. The evidence was clear that he well knew about the psychological evaluation when he went to work for the Fire Department."

We concur with the Chancellor. The Plaintiff does not assign error to this finding of the Chancellor. Plaintiff's assignment of error is: "The Chancery Court, Part I, for Knox County, Tennessee, erred in failing to find that the defendants abridged plaintiff's due process liberty interest as a result of violating its own adopted procedures, and failing to provide a pretermination hearing to refute the charge of emotional unsuitability, and failing to award damages as a result thereof."

The Plaintiff is now saying on this appeal, for the first time, " . . . defendants abridged plaintiff's due process liberty interest as a result of violating its own adopted procedures. . . . "

■ The proof shows that, after the *Connaster* case, *supra*, the City adopted a policy of having the psychological evaluation conducted before a fireman or policeman was employed. That procedure was not followed in the Plaintiff's case because he was a CETA employee and did not come into the employment as other employees customarily do. Had the evaluation been conducted prior to Plaintiff's employment, it no doubt would have prevented his employment as a fireman. However, we do not think this is controlling. Also, since the case was not tried on this theory, nor was the issue raised below, it cannot now be raised for the first time in this court. *Murphy v. Reynolds*, 31 Tenn.App. 94, 212 S.W.2d 686; *McDaniel v. Owens*, 39 Tenn.App. 73, 281 S.W.2d 259; *Thomas v. Noe*, 42 Tenn.App. 234, 301 S.W.2d 391.

■ As to the Plaintiff's contention he was entitled to a pre-termination hearing, the Chancellor, in his memorandum opinion, said: "Section Seventy-five of the City Charter provides that for a period of six months after appointment, a person entering into the Civil Service is subject to discharge by the director in charge of the department at his sole discretion. In the *Connaster* case, it was ruled that such an employee had merely a unilateral expectation of continued employment, which is insufficient to invoke the safeguards of procedural due process."

We concur with the findings of the Chancellor. The assignments of error are overruled. The decree of the Chancellor is affirmed and the cost of this appeal is taxed to the Appellant.

PARROTT, P. J. (E.S.), and GODDARD, J., concur.