**Vina SUTTON, Executrix of the Estate of Clyde Bledsoe, Plaintiff-Appellee,**

**v.**

**J. D. BLEDSOE, et al., Defendants-Appellants.**

Court of Appeals of Tennessee, Eastern Section.

Nov. 6, 1981.

Permission to Appeal Denied by Supreme Court Feb. 16, 1982.

Andrew J. Sinor, Cleveland, for defendants-appellants.

Sam M. Plummer, Chattanooga, for plaintiff-appellee.

OPINION

SANDERS, Judge.

The contestants in a will contest have appealed from a jury verdict in favor of the proponent of the will.

Clyde Bledsoe died testate in Hamilton County in 1979. His estate consisted of approximately $50,000 in cash and a four-room residence with an estimated value of $25,000. He had never been married and

lived with an older sister, Sarah Jane Bledsoe, who, likewise, had never been married. However, he was one of 10 children and was survived by three sisters and two brothers. He was also survived by some nephews and nieces who were children of deceased brothers and sisters.

After he had become terminally ill with cancer he made a will some 10 days before his death in which he left his entire estate to the Plaintiff-Appellee, Vina Sutton, the wife of his next-door neighbor. She was also named executrix of the will. The will provided that the testator's sister, Sarah Jane Bledsoe, be permitted to live in the residence. The will was offered for probate in the Chancery Court of Hamilton County but its validity was challenged by two of the brothers and one of the sisters of the deceased.

The case was transferred to the circuit court for trial before a jury. The court submitted the following issues to the jury for determination: (1) "Did the deceased, Clyde Bledsoe, at the time of making his will, know and comprehend what he was doing?" and (2) "Was undue influence placed upon Clyde Bledsoe in the preparation and execution of his will?" The jury answered the first question in the affirmative and the second question in the negative. The contestants' motion for a new trial was overruled and they have appealed.

The Appellants insist that a confidential relationship existed between the deceased and Mrs. Sutton. As a result of this confidential relationship a presumption arises that undue influence had been exercised upon the testator. The beneficiary of the will was required to rebut this presumption by clear, cogent and convincing proof. She failed to do this and the trial judge should have sustained their motion for a directed verdict at the close of the proof.

The proof shows that the deceased and Mrs. Sutton had been close personal friends for approximately 25 years. During that period of time they had been next-door neighbors. They had gone on fishing and hunting trips together. They went hiking together and they confided in each other.

When he went into the hospital on September 19 Mrs. Sutton spent a great deal of time at the hospital taking care of him. She bathed and shaved him. She helped him with his food and laundered his pajamas. As she described it, she loved him like a member of the family and he likewise loved her. It is this relationship which Appellants contend constituted a confidential relationship.

Some three days after the deceased was admitted to the hospital he asked Mrs. Sutton to have her husband come to the hospital. When Mr. Sutton arrived at the hospital the deceased advised him he wanted him to draw a will for him. It appears that about a year prior to this time Mr. Sutton had drawn a will for himself and the deceased had signed it as a witness. When the deceased asked him to draw his will Mr. Sutton suggested he get an attorney but the deceased insisted that since Mr. Sutton had drawn his own will he wanted him to draw his. The deceased was also aware that Mr. Sutton had left his estate to his wife and when Mr. Sutton asked the deceased what he wanted in his will he said he wanted it "just like yours but I want my sister, Sarah Jane, to live in the house." That evening at home Mr. Sutton prepared a hand-written will for the deceased leaving all of his estate to Mrs. Sutton with the provision that Sarah Jane Bledsoe be permitted to live in the residence. The next morning Mrs. Sutton went to the hospital and took the will to the deceased. After she read the will to him he said it was what he wanted and signed it. He then requested that a Mrs. Davis with whom he worked be called to come to the hospital and sign it as a witness. Mrs. Davis and her husband went to the hospital that morning and after discussing it with the deceased signed the will as witnesses in his presence and in the presence of each other. A few days after the will was executed a copy of it was shown to the deceased's brother, Taylor Bledsoe, and he became very angry and upset because the deceased had left his estate to Mrs. Sutton and he expressed his anger to the deceased.

The deceased's doctors realized he was terminally ill and there was nothing that could be done for him in the hospital and they gave permission for him to leave and go home. His sister who lived with him was elderly and in poor health and could not care for him so Mrs. Sutton took him to her home on September 27. The deceased was fearful his brother, Taylor, would attempt to "break" the will so on September 28 he requested that his friend, William W. Shelton, who was a notary public, be called to notarize the will. He also requested that his neighbor, Dianne Clift, also witness the will. Mrs. Clift testified that Mr. Shelton read the will to the deceased before he notarized it and he said it was exactly the way he wanted it. She also testified that on a previous occasion while he was in the hospital she took his sister, Sarah Jane, to the hospital so he could tell her about the will. "He told her he had everything fixed just exactly like he wanted it and to not let Taylor and the rest of them upset her and cause her to have a heart attack."

In dealing with the question of confidential and fiduciary relationships and the exercise of undue influence by a donee over a donor, our courts have recognized two separate categories. One is the fiduciary relationship such as "guardian and ward, trustee and *cestui que* trust or any other relationship where the law prohibits dealings between the parties." The other phrases the general rule in terms of abuse of confidence and the exercise of "dominion and influence as opposed to the mere existence of the confidential or fiduciary relationship." *Kelly v. Allen*, Tenn., 558 S.W.2d 845 (1977). The *Kelly* court, in addressing the second category, said at 848:

"In line with these authorities we hold that the normal relationship between a mentally competent parent and an adult child is not *per se* a confidential relationship and raises no presumption of the invalidity of a gift from one to the other. In order for such a presumption to arise there must be a showing that there were present the elements of dominion and control by the stronger over the weaker, or there must be a showing of senility or physical and mental deterioration of the donor or that fraud or duress was involved, or other conditions which would tend to establish that the free agency of the donor was destroyed and the will of the donee was substituted therefor. In such cases the rules require the application of the presumption and the rule of independent advice comes into play."

The court further said at 847:

" 'It is settled that the mere fact that one who benefits by a will had a motive and an opportunity to exert influence over the testator is not sufficient, of itself, to create a presumption that the will was the product of undue influence. [*Halle v. Summerfield*], 199 Tenn. [445] at 456, 287 S.W.2d [57] at 62.' "

In the case of *Parham v. Walker*, Tenn. App., 568 S.W.2d 622 (1978) the court held that the relationship of conservator and ward came within the first category of cases set forth in the *Kelly* case and it was error for the trial court to fail to instruct the jury there was a presumption of undue influence and the donee had the burden of showing the fairness of the transaction.

In the case of *Robinson v. Robinson*, Tenn.App., 517 S.W.2d 202 (1974) the court said at 206:

"Although our courts have not defined very clearly the elements which must be present for a confidential relationship to exist, it appears that any relation of confidence between persons which gives one domination over the other falls within the category. *Bayliss v. Williams*, 46 Tenn. 440; *Miller v. Proctor*, 24 Tenn.App. 439, 145 S.W.2d 807; *Roberts v. Chase*, 25 Tenn.App. 636, 166 S.W.2d 641."

Under the facts in the case at bar we fail to find where the beneficiary of the will exercised any dominion over the testator. We think the proof is clear that he had the will prepared the way he wanted it and after his brother angrily expressed disapproval of the will he took extra precautions to be sure they could not "break it." The jury found there was no undue influence placed upon the testator and there is ample proof to support such a finding.

■ The Appellants contend that the court failed to properly charge the jury on the burden of the Appellee to overcome the presumption of undue influence.

We have carefully read the court's charge to the jury and he devoted almost three pages of his charge to the question of undue influence and we find that the court fairly and adequately charged the jury on all issues in the case.

■ The Appellants also say the court failed to perform his function as 13th juror by failing to properly consider their motion for a new trial.

The record indicates that the court was disturbed by the fact that he had been led by counsel for the Appellants to believe that no motion for a new trial was going to be made and he had discussed the case with Appellants' counsel after the trial and before the motion was filed. When the motion was called for hearing the court indicated he was summarily overruling the motion because of his conversation with counsel about the case. However, in the course of the discussion the court stated he had read the motion and was overruling it. The court further said he didn't think the jury was wrong. After considering the record as a whole on this issue, we conclude the court did not summarily overrule the motion but considered it on its merits and was satisfied that the jury had reached a correct verdict.

■ Appellants' fourth issue is: "Did the Defendants receive a fair trial by reason of the disjointed, confused and insufficient pleadings and issues put to the jury?"

This issue is raised for the first time on this appeal. There were no objections by the Defendants to any of the pleadings or issues presented to the jury in the trial court. Since this issue was not raised in the trial court, it cannot be raised in this court for the first time. *Murphy v. Reynolds*, 31 Tenn.App. 94, 212 S.W.2d 686; *McDaniel v. Owens*, 39 Tenn.App. 73, 281 S.W.2d 259; *Thomas v. Noe*, 42 Tenn.App. 234, 301 S.W.2d 391; *Moran v. City of Knoxville*, Tenn.App., 600 S.W.2d 725.

The issues are found in favor of the Appellee. The judgment of the trial court is affirmed and the cost of this appeal is taxed to the Appellants.

PARROTT, P. J., and GODDARD, J., concur.