Gerald Roy LANDRY, Plaintiff–
Appellant,

v.

Robert DOOD, Individually and in his ca-
pacity as Chief of Police of the City of
Rossville, Tennessee; and The City of
Rossville, Tennessee, Defendants–Appel-
lees.

Court of Appeals of Tennessee,
Western Section, at Jackson.

Aug. 27, 1996.

Application for Permission to Appeal
Denied by Supreme Court Nov. 25, 1996.

Michael W. Whitaker, Covington, for Plain-
tiff–Appellant.

Paul F. Rice, Utley & Latimer, Jackson,
for Defendant, Robert C. Dood.

Charles A. Sevier and Reid R. Phillips,
The Sevier Law Firm, Memphis, for Defen-
dant, City of Rossville.

CRAWFORD, Presiding Judge, W.S.

Plaintiff, Gerald Roy Landry, filed suit
against defendants Robert Dood, individually
and in his official capacity as Chief of Police
of the City of Rossville, Tennessee, and the
City of Rossville, Tennessee, claiming depri-
vation of his constitutional rights under 42
U.S.C. § 1983 (West 1994), as well as other
theories of liability. Prior to trial plaintiff
waived or abandoned all theories of liability
except those claims arising under 42 U.S.C.
§ 1983. The case was tried by the court
sitting without a jury and, at the close of
plaintiff's proof, defendants moved for dis-
missal pursuant to Tenn.R.Civ.P. 41.02(2).
The defendants' motion was granted, and this
appeal followed.

Roy Landry was hired by the City of
Rossville as a rookie patrolman in 1989. In
1990, Landry approached Chief Dood, seek-
ing Dood's assistance in training Landry's
personal dog, Cody, to become a police dog.
Landry stated that he needed to use guns
and drugs which had been confiscated by the
police department to train the dog at his

home in Collierville, Tennessee. Pursuant to this request, Chief Dood wrote the following letter:

August 3, 1990

To Whom It May Concern:

Officer Roy Landry, of the Rossville Police Department, is given this day permission by this department, to maintain in his possession certain materials, objects and weapons confiscated by this department. These articles are to be used in the training of his dog, Cody, for his use by this department. These articles are to be maintained by Officer Landry in a safe and secure manner. Officer Landry will be subject to the accountability of these articles deemed the property of the Rossville Police Department at any and all times.

_/s/_____
Robert C. Dood
Chief of Police

In about July of 1992, Dood became concerned about some unaccounted for guns and sought the advice of the District Attorney General. The Attorney General, on Dood's behalf, informed the Tennessee Bureau of Investigation (TBI). In the fall of 1992, Johnnie Simmons, a TBI Agent, came to Landry's home inquiring about the location of certain weapons. In a sworn statement, Landry explained that he had seized three weapons from persons he had arrested between June and September of 1992, including a .38 Smith & Wesson revolver, a .32 H & R revolver, and a .25 Titan semiautomatic pistol. When asked by the TBI agent why he kept these guns at his home instead of at the police department, he stated:

For one we don't have a secure place to store the guns. We have a filing cabinet for guns and drugs but only Chief Dood has a key. If he isn't around no one can get in the cabinet to store the guns there. I also have talked to the mayor about the fact that several guns have come up missing from city hall after the flood last year and since. He told me not to store the Smith & Wesson .38 or the .32 H & R at city hall because he wanted them for his

personal protection. I have intended to give the mayor the .32 H & R since it was forfeited to the city but haven't had the opportunity.

I have intended to keep the .25 Titan ... and use it as a back-up weapon. I haven't used it because I haven't taken the time to clean it yet.

The TBI officer also asked Landry why his arrest reports indicated that the weapons had been confiscated by the court, when in fact Landry had possession of those weapons. Landry responded that he thought when guns were initially seized they were being surrendered to the court and that the court was confiscating the weapon. He stated that he did not realize that he was supposed to put the final destination of the weapon; to wit, his home, on the arrest report.

As a result of Landry's interview with the TBI agent, Chief Dood sent the following letter to Landry [1]:

On June 28, 1992, and August 8, 1992, you seized pistols incidental to arrests. After both cases were prosecuted in Fayette County General Sessions Court, the guns were turned over to the City of Rossville by Court decree thus making them City property. You did then take and keep this property for yourself and did not return it to the City.

Again on September 11, 1992, you seized another pistol from a citizen and once more, after prosecution of this case in court, you failed to turn this gun over to the City for proper disposal and did keep it for yourself. You are therefore charged with the following: 1. Theft of City property by mis-appropriation in keeping the City of Rossville property for your own. 2. Violation of City Ordinance 1–606, where you seized private property and did keep it for your own gain.

You will be given a chance to answer to these charges before the City Personnel Committee on Thursday October 29, at 7:00 p.m. in the Rossville City Hall.

_____/s/_____
Robert C. Dood

1. Landry testified that, pursuant to Mayor James Gaither's request, he gave the mayor a .38 revolver that had been confiscated. Landry has

not raised an equal protection claim on appeal; thus, this Court will not address that issue. T.R.A.P. 13(b).

Officer Landry attended the personnel committee meeting on October 29, 1992. On November 2, 1992, the mayor and Board of Aldermen (Board) unanimously voted to terminate Officer Landry. Landry was not present at the November 2, 1992 meeting. The Board informed Landry that he would have an opportunity for a post-deprivation hearing, and this occurred on November 10, 1992. At the post-deprivation hearing, Landry, for the first time, presented to the Board the August 1990 letter, which gave him permission to possess certain confiscated weapons and drugs for the purpose of training his dog. As was later revealed during trial testimony, both Landry and Chief Dood had completely forgotten about the August 1990 "permission letter." According to the testimony of Currie Morrison, Vice Mayor of Rossville, the Board didn't think the letter pertained to the situation at hand, nor did it find that the letter excused Landry's conduct. On November 16, 1992, following the November 10th appeal, Landry was formally informed of his dismissal from the City of Rossville Police Department, effective November 2, 1992. On November 23, 1992, Landry was indicted by the Fayette County Grand Jury for theft of less than $500.00 and official misconduct.

On appeal, plaintiff presents two issues for this Court's review which, as stated in appellant's brief, are as follows:

1. Whether plaintiff was terminated as a police officer by the City of Rossville without due process of law.

2. Whether defendants violated plaintiff's civil rights by prosecuting him for stealing weapons when defendants had actual knowledge that Chief Dood had given him permission to use them.

The standard of review on a case dismissed pursuant to Tenn.R.Civ.P. 41.02(2) is de novo upon the record of the trial court, accompanied by a presumption of the correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. T.R.A.P. 13(d)

█ Plaintiff's first issue on appeal concerns whether or not plaintiff was provided with adequate procedural due process prior to his termination.[2] However, we find that plaintiff has waived his right to raise any procedural due process claims on appeal. The record reveals that plaintiff made a conscious choice not to proceed under a procedural due process claim. In the opening statement, plaintiff's counsel said:

> If you're going on a procedural deprivation of rights, such that there wasn't a fair hearing or anything, then you might be required to exhaust state remedies, but we are going under substantive deprivation of rights, if the court please....

At the conclusion of the plaintiff's proof, plaintiff's counsel made the following statement:

> Just briefly, as I said before the trial started, I would forget about the procedural due process claims. We are not proceeding on that at all. We are talking about substantive due process, along with the deprivation of the Bill of Rights rights not to be seized without due process of law or to be arrested without due process of law. That's substantive due process, and has nothing to do with procedural safeguards.

Based on these statements, we find that the appellant has waived his right for this Court to consider a procedural due process claim. It is well settled that issues not presented at trial cannot be raised for the first time on appeal. *Moran v. City of Knoxville,* 600 S.W.2d 725, 728 (Tenn.App.1979); *Alumax Aluminum Corp., Magnolia Div. v. Armstrong Ceiling Sys.,* 744 S.W.2d 907, 910 (Tenn.App.1987).

Plaintiff's second issue on appeal concerns his substantive due process claims. Landry asserts that Chief Dood instigated the prosecution against him in retaliation for a successful workers' compensation claim brought by Landry in 1991, as well as a disagreement he had with the Chief over the color of the

2. We address herein appellee Dood's issue on appeal, to wit: "Whether the Plaintiff abandoned any possible claims for procedural due process

violations, such as those raised by Appellant's Issue I?"

officers' uniforms.[3] Furthermore, Landry asserts that Chief Dood knew about the August 1990 permission letter prior to the time that Landry was indicted, and that Dood knowingly and intentionally allowed an indictment to be handed down against him when Dood knew that Landry had permission to use the confiscated weapons. Dood, on the other hand, claims that he had entirely forgotten about the letter, as had Landry, and that it was, at the most, negligence on his part not to have informed General Rice of the permission letter after Landry showed it to him at the November 10, 1992 appeal hearing, which occurred prior to the time the indictment was handed down.[4]

■ 42 U.S.C. § 1983 provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

*Id.* In order for this Court to consider whether a plaintiff has sustained an injury to which 42 U.S.C. § 1983 provides redress, we must determine "whether the plaintiff was deprived of a protected interest; and, if so, what process was due." *Lee v. Ladd,* 834 S.W.2d 323, 325 (Tenn.App.1992). Although 42 U.S.C. § 1983 provides a remedy for both substantive and procedural due process violations, *United States v. Salerno,* 481 U.S. 739, 746, 107 S.Ct. 2095, 2101, 95 L.Ed.2d 697 (1987), it "is not itself a source of substantive rights but merely provides a method for vindicating federal rights elsewhere conferred."

*Albright v. Oliver,* 510 U.S. 266, 271, 114 S.Ct. 807, 811, 127 L.Ed.2d 114 (1994) (citing *Baker v. McCollan,* 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 2694, n. 3, 61 L.Ed.2d 433 (1979)).

The first step in a 42 U.S.C. § 1983 claim involving allegations that substantive due process rights have been violated is to "identify the specific constitutional right allegedly infringed." *Albright,* 510 U.S. at 271, 114 S.Ct. at 811. The *Albright* Court stated that, "[w]here a particular amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" 510 U.S. at 273, 114 S.Ct. at 813.

In *Pearson v. City of Grand Blanc,* 961 F.2d 1211, 1217 (6th Cir.1992), the court recognized that substantive due process claims may be invoked in the context of "arbitrary or capricious" state action or in those cases where the actions of a state or local government "shock the conscience" of the court. However, the *Pearson* court recognized that use of a "shock the conscience" test is "problematic" in areas other than excessive force cases. *Id. See, e.g., Rochin v. California,* 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952) (stating that pumping petitioner's stomach to obtain evidence of drug use "shocks the conscience" of the Court).

In the instant case, Landry apparently claims that he was "seized" in violation of the Fourth Amendment to the United States Constitution. The record shows that Landry surrendered himself to the Fayette County judge, and was later fingerprinted and booked at the Fayette County jail. Landry claims that the defendants, under color of state law, caused him to be deprived of his constitutional rights without due process.

---

3. Landry testified that he complained about the color of the Rossville police officer uniform, which was gray, to Chief Dood, saying that the gray color made the officers too visible at night. When Chief Dood refused to change the uniform color, Landry went to the Board. The Board chose to override Chief Dood's decision, and changed the uniform color. Chief Dood admitted at trial that this incident caused him embarrassment.

4. On December 17, 1992, District Attorney Rice moved for a *nolle prosequi,* and all charges against Landry were dismissed. General Rice stated in her affidavit that after she learned about the contents of the permission letter, she did not think she could get a verdict of guilty beyond a reasonable doubt.

He asserts that the defendants used a governmental office to instigate a criminal prosecution against Landry in order *to get rid of* "a thorn in their side." Landry claims that Chief Dood acted intentionally and maliciously by choosing not to communicate the contents of the August 1990 permission letter to the District Attorney after he [Dood] learned of its contents, in effect instituting a criminal prosecution without probable cause.

■ Based upon our review of the record, we must respectfully disagree with Landry's claims that the defendants violated his substantive due process rights. The record is clear that both Landry and Chief Dood completely forgot about the permission letter. The fact that Landry found the letter prior to his November 10, 1992 appeal hearing was a sheer coincidence. These facts cause us to conclude that Chief Dood did not initiate his inquiry about the location of missing weapons *knowing* that Landry might have rightfully possessed those weapons pursuant to a letter Dood wrote two years earlier. While there is ample evidence that Chief Dood and Landry had, at best, a strained relationship, that fact is not sufficient to show a violation of substantive due process under 42 U.S.C.

§ 1983. Neither Chief Dood's action in contacting the District Attorney to report the missing weapons nor his failure to report the existence of the permission letter to the District Attorney after Landry made him aware of its existence constitute "arbitrary and capricious" governmental action. Moreover, we find it significant that Landry himself did not send a copy of the permission letter to the District Attorney since he also remembered the letter's existence prior to the date that the indictment was handed down.

Based on our review of the record, we cannot say that the evidence preponderates against the findings of the trial court that Landry was not denied substantive due process. The judgment of the trial court is affirmed. Costs on appeal are taxed to the appellant.

HIGHERS and LILLARD, JJ., concur.