LOUISE SULLIVAN (KING),            )
                                   )
        Plaintiff/Appellant,       )        Appeal No.
                                   )        01-A-01-9803-CV-00116
v.                                 )
                                   )        Davidson Circuit
ALLISON GRANT KING, JR.,           )        No. 86D-1610
                                   )
        Defendant/Appellee.        )

**FILED**

May 5, 1999

Cecil Crowson, Jr.
Appellate Court Clerk


COURT OF APPEALS OF TENNESSEE


APPEAL FROM THE DAVIDSON COUNTY CIRCUIT COURT

AT  NASHVILLE, TENNESSEE


THE HONORABLE MURIEL ROBINSON, JUDGE


SUSAN H. MOSELEY
Moseley & Moseley
Suite 300, One Church Street
101 Church Street
Nashville, Tennessee  37201-1609
        ATTORNEY FOR PLAINTIFF/APPELLANT


ROSEMARY E. PHILLIPS
429 Church Street
P. O. Box 590
Goodlettsville, Tennessee  37070-0590
        ATTORNEY FOR DEFENDANT/APPELLEE


AFFIRMED AND REMANDED


WILLIAM B. CAIN, JUDGE

# O P I N I O N

This case involves a mother's post-divorce petition to modify custody. The trial court dismissed the petition and awarded attorney fees to the father's attorney. The mother asserts that circumstances have changed such that it is now in the children's best interests to live with her. We do not find that the mother has made the requisite showing of changed circumstances, and, accordingly, we affirm the decision of the trial court.

I.

Louise Sullivan King ("the Mother") and Allison Grant King ("the Father") were divorced by final decree in 1988. The final decree awarded temporary custody of the parties' three minor children to the Father, and, two and a half years later, this award was made permanent by order entered May 3, 1990. At that time, the oldest child, Alice, was 10 years old and the younger twins, Grant and Mary, were 7 years old. Since then, the children have resided with the Father and the Mother has paid child support and visited regularly with the children.

The proceedings giving rise to this appeal began when, on March 31, 1997, the Mother filed a Petition for Change of Custody which alleged the following material change of circumstances: Alice, born October 18, 1979, was a high school senior about to turn 18 years of age (and did turn 18 three days after this petition was heard), Grant and Mary, born October 8, 1983, were 13 years old, and all three children had expressed a desire to live with the Mother. The petition further alleged that the Father had not provided the children with the standard of care for their educational, medical and social development that she would be able to provide them if she had custody.

At trial, the Mother testified regarding the circumstances that precipitated her filing the petition. She said that after the Father filed a Petition for an Increase in Child Support, she communicated to the children that she would not be able to provide financially for them in the manner to which they were

accustomed at which point the children suggested they live with her. The evidence was that the Mother's annual salary was $47,000 and the Father's was $17,000.

At the hearing, the Mother stated that "the main thing that has changed is the age of Grant and Mary and their willingness and desire to go through this whole process." Also, the Mother expressed concern over the fact that Alice was leaving the household as she felt that Alice played an important role for the younger children as a mother figure. The Mother testified that the children do not get the emotional support they needed from the Father. She stated that the Father is not sympathetic to the children's needs, for example, he does not always notice that they are ill until they point it out to him. While the Mother claimed that she is the parent who helps them with homework and takes them to the library, she acknowledged that she has not been involved in their school activities as much as she would have liked.

The Mother entered some photographs into evidence that showed that the Father's house and yard were not clean or well kept. She put on photographic proof that showed her own house to be neat and clean. Other photographs were entered which depicted the inside of the Father's home. These were taken by Alice who testified that she took them because she was "angry at the living conditions."

All three children were called by the Mother to testify, and both of the minor children expressed their preferences to live with the Mother. Grant testified that he prefers to live with the Mother because he has asthma and can breathe easier at her home. He also testified that the Mother helps him with school work and boy scouts. He stated that he would just like to spend his last four years at home with her since he has spent the first part of his life with the Father. Grant testified that both parents have similar rules. He stated that he feels safer at the Mother's house because he knows the neighbors there. Grant acknowledged that the Father had gotten him involved in scouts and had been on rafting and fishing trips with him. He confirmed that the Father had taught him to cook and to sew. His seventh grade report card, which was entered into

evidence, revealed A's and B's and only a few absences.

Mary articulated as the reason she wants to live with her Mother the fact that she will have more freedom and more privileges. On cross-examination, she explained this by saying that with the Mother, she "get[s] to watch the shows that [her] dad doesn't think are appropriate, like the Simpsons, which everybody almost watches. I get to have friends over. I get to go around and not have like tight restrictions on where I go, and I get to go out in the forest behind our yard and not have to worry about if I have to -- just like a certain time limit that I have to be out there and come back." Mary testified that the Father has basic rules such as that she keep her room clean and go to bed by 9:30.

Mary stated that while the Mother treats her like an individual, the Father treats her like she is inferior and can not comprehend things the way other people can. She explained that the Mother is a better listener to her problems. She stated that she would like to continue her relationship with the Father should custody be modified: "I really don't have anything against him, except I just want to live with my mom. And we [(Mary and the Father)] have a whole bunch in common, like we like to do fly fishing and stuff. We like to do different sports. And there really isn't anything that would change, except that I would be living with my mom." It was Mary's testimony that the Father allows her to call the Mother as often as she wishes.

The evidence was that Mary attended a magnet school and had been inducted recently into the National Honor Society. Her seventh grade report card reflected excellent grades and a perfect attendance record. She plays soccer as well as tennis and basketball.

The oldest child, Alice, confirmed that the Father had been present at many of the children's outings and events though she claimed that he only took an interest in the children's schooling at report card time. Though she claimed there were no set rules in her Father's household, she described a rigid arrangement in which she was not allowed to go out with friends or to use her car. Alice claimed that the Father's smoking had been the cause of several

illnesses for all of the children. Alice felt like the younger children were afraid of the Father and that without her at home, he would take out his anger on them.

The Father's deposition was entered into evidence. The Father felt like the children's desire to move stemmed from the fact that they have no rules at the Mother's house. He testified that there are rules at his house, that the children are responsible for cleaning their own rooms, washing dishes, mowing the yard and cleaning the house. He described a functional family situation at home. He testified that his children are involved in many activities in which he participates to an extent. He stated that the children occasionally have friends over to their home. He testified that he has tried to promote the children's relationship with the Mother. Regarding his smoking, the Father testified that he is trying to quit and that he does not smoke in the children's presence.

After the Mother put on her proof, the trial court granted the Father's motion to deny and dismiss the Mother's Petition for a Change of Custody. Also, the court's order enjoined the Father from smoking around the minor children. Finally, the court ordered that the Mother pay directly to the Father's attorney, Rosemary Phillips, the sum of $1250.00 and that the costs of this cause be taxed to the Mother. The Mother then moved for a new trial. The Court denied the Mother's Motion for a New Trial and ordered that the costs of this cause be taxed to her as well.

II.

Once an initial custody award had been made, modifications of custody are ordered "as the exigencies of the case may require." Tenn. Code Ann. § 36-6-101(a)(1) (Supp. 1998). This means that custody will be changed only when there is a "change in circumstances as will directly affect the welfare of the minor" children. *Massengale v. Massengale*, 915 S.W.2d 818, 819 (Tenn. App. 1995) (quoting *Dailey v. Dailey*, 635 S.W.2d 391, 393 (Tenn. App. 1981)). "'Changed circumstances' includes any material change of circumstances

affecting the welfare of the child, including new factors or changed conditions which could not be anticipated by the custody order." *Blair v. Badenhope*, 940 S.W.2d 575, 576 (Tenn. App. 1996) (citing *Dalton v. Dalton*, 858 S.W.2d 324 (Tenn. App. 1993)). The burden to prove these changed circumstances is on the non-custodial parent. *Harris v. Harris*, 832 S.W.2d 352, 353 (Tenn. App. 1992).

Appellate court review of a trial court's factual determinations on the issue of custody modification is de novo with a presumption of correctness: the record developed below comes to the appellate court accompanied by a presumption of correctness that will be honored unless the evidence preponderates against the findings of fact supporting the lower court's judgment. Tenn. R. Civ. P. 13(d); *Hass v. Knighton*, 676 S.W.2d 554, 555 (Tenn. 1984). Since custody "decisions often hinge on the parties' credibility, appellate courts are reluctant to second-guess trial judges who have observed the witnesses and assessed their credibility." *Adelsperger v. Adelsperger*, 970 S.W.2d 482, 485 (Tenn. App. 1997). Appellate courts will not disturb "custody decisions unless they are based on a material error of law or the evidence preponderates against them." *Id.*

At the close of the hearing on the Mother's petition to modify custody, the trial judge found there were "no sufficient circumstances that would warrant a change of custody." The court stated that "[c]hildren have a right to state their preferences, and I've heard them. But, in view of everything that you have said, I cannot find that a change is warranted."

The Mother's first issue on appeal is that the court erred in dismissing her petition to change custody. Initially, we point out that it is only the custody of the younger twins that is an issue on appeal since Alice is no longer a minor. The Mother contends that she has shown changed circumstances and thus has met her burden of proof. The Mother's argument is based upon a comparison of current circumstances with those in existence at the time of the May 3, 1990 Order which made the initial award of custody to the Father permanent. In that order, the following findings of fact were made:

> The court finds that the children are doing well in their school work and that their progress has improved over the last two and one-half

(2½) years. The Court further finds that the father is furnishing a nice and comfortable home for their children as is the mother. The Court further finds that the father has a good support system in that his relatives from time to time, help him care for the children. The Court further finds that the children are healthy and seem to be well adjusted in their present situation.

The May 1990 Order concluded with the court's finding that there was no reason to change custody. The children are "well adjusted and doing well both emotionally and physically, and are adequately provided for by the father." The court clarified that it was "not finding that the mother is not a fit person, but is finding that the children are well adjusted and doing well in school and are healthy and well cared for, and can find no reason to change custody at this time."

It is the Mother's position that the Father has not maintained an environment with the positive factors which were enumerated in the May 1990 order. We disagree finding that the present circumstances for these children are not materially changed from those articulated in the 1990 Order. The Mother claims that the Father's house is no longer clean or in good maintenance. While there was evidence at trial that the Father's house was not well kept, we do not find that this is a changed circumstance which would not have been anticipated at the time of the final decree. Indeed, we find that it is reasonable to anticipate that a single parent who is working full time and raising three teenage children would have difficulties as a housekeeper.

The Mother also claims that the Father no longer has a support system as evidenced by the fact that the children have stayed at home alone. The fact that the children have stayed alone does not support such a conclusion. At the time of trial, the children were almost 14 years old, and the fact that they occasionally stayed alone does not indicate the lack of a support system. The Mother also claims that the Father has not shown consistent regard for the health of the children as evidenced by his failure to insure a smoke-free environment for them. However, the Father testified that he does not smoke around the children and that he was attempting to stop smoking altogether. In addition, the trial court's order enjoined the Father from smoking around the minor children.

Not only has the Mother failed to show unanticipated facts and conditions that affect the welfare of the children, but the evidence shows that these children have flourished while in the primary custody of the Father. In 1990, the court found that the children were healthy and well adjusted. The evidence presented below reveals that the children have continued to thrive emotionally, physically and academically. Mary has received academic honors. She testified that she is an active athlete involved in soccer, basketball and tennis. Grant also is enjoying success in school and is active in boy scouts. Though Alice's custody is not in dispute, it is significant to note that she graduated from high school with excellent grades and is now attending college.

It is clear that these children currently prefer to live with the Mother; however, their preferences do not appear to be indicative of changed circumstances which directly affect their welfare. While Alice testified that her younger siblings are afraid of the Father, the twins' testimony does not support such a conclusion. Mary indicated a desire to continue a relationship with the Father should custody be modified adding that she and the Father enjoy many activities in common. Grant testified that his rationale for wanting change was partially based upon the fact that he has spent the first part of his life with the Father and now wants to live with the Mother. This court has made clear that a child's wishes are only one factor of many enumerated in the statute which governs the determination of the best interest of a child in a custody case. *Harris v. Harris*, 832 S.W.2d 352, 353 (Tenn. App. 1992). The trial judge stated that she did consider the children's preferences; however, the trial judge found and we agree that their preference to live with the Mother is not enough to show a material change of circumstances mandating a change of custody.

To the extent that there is any truth to the Mother's claim that she is the better parent to ensure the children's emotional well being, our holding does not prevent her from continuing to do just that. Mary testified that she is permitted to call the Mother any time she wishes. The children see the Mother on a weekly basis and spend alternative weekends with her. Thus, the Mother has much opportunity to attend to the children's emotional needs.

III.

In her final issue, the Mother contends that the trial court erred when it awarded attorney fees and costs to the Father's attorney. Section 36-5-103(c) of the Tennessee Code provides in pertinent part as follows:

> The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred ... in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

Tenn. Code Ann. § 36-5-103(c) (Supp. 1998). The Mother argues that because the nature of custody cases is so fact driven, attorney fee awards exert a chilling impact on parents who sincerely feel that the best interest of their children requires a custody modification. Our court has made the determination that "requiring parents who precipitate custody or support proceedings to underwrite the costs if their claims are ultimately found to be unwarranted is appropriate as a matter of policy." *Sherrod v. Wix*, 849 S.W.2d 780, 785 (Tenn. App.1992). The trial court's decision to award attorney fees rests within the discretion of the trial court. *Id.* The Mother did initiate these proceedings. Moreover, she makes an annual salary of $47,000 whereas the Father makes $17,000. In light of this record, we find that the trial court did not abuse its discretion in awarding attorney fees and costs to the Father.

IV.

In conclusion, we find that the evidence does not preponderate against the trial court's finding that there has been no change of circumstances affecting the welfare of the minor children. There is simply no evidence that new facts and circumstances have arisen such that the welfare of these children requires a change in custody. In addition, we hold that the trial court did not abuse its discretion in awarding attorney fees to the Husband's attorney. Finally, we order that the costs of this appeal should be taxed to the Wife.

_____
WILLIAM B. CAIN, JUDGE


CONCUR:


_____
BEN H. CANTRELL, P.J., M.S.


_____
PATRICIA J. COTTRELL, JUDGE