James R. WILTCHER and Patsy
Wiltcher, Plaintiffs-Appellants,

v.

John C. BRADLEY, d/b/a J.C. Bradley
Construction Company,
Defendant-Appellee.

WITT BUILDING MATERIAL
COMPANY, INC., Plaintiff,

v.

James R. WILTCHER, et al.,
Defendants.

AMERICAN LIMESTONE
COMPANY, Plaintiff,

v.

James R. WILTCHER, et al.,
Defendants.

TATE WINDOW AND DOOR
COMPANY, Plaintiff,

v.

James R. WILTCHER, et al.,
Defendants.

Court of Appeals of Tennessee,
Eastern Section.

Nov. 8, 1985.

Application for Permission to Appeal
Denied by Supreme Court
March 3, 1986.

W.W. Davis, Jr., Egerton, McAfee, Armistead & Davis, Knoxville, for plaintiffs-appellants.

Thomas D. Kerr, Jr., Foglesong, Cruze, Shope & Kerr, Knoxville, for defendant-appellee John C. Bradley, d/b/a J.C. Bradley Const. Co.

Judy Pinkston McCarthey, Frantz, McConnell & Seymour, Knoxville, for American Limestone Co.

Mark A. Rosser, Ambrose, Wilson & Grimm, Knoxville, for Tate Window and Door Co.

A.L. Witt, Witt, Waters, Valliant & Privette, Knoxville, for Witt Building Material Co., Inc.

Christopher Capps, Morristown, for Morristown Savings and Loan Association.

## OPINION

SANDERS, Justice.

The Plaintiffs have appealed from a chancery decree allowing an unlicensed contractor a recovery on a counterclaim.

In August, 1983, Plaintiffs-Appellants, James R. Wiltcher and Patsy Wiltcher, entered into a "cost-plus" oral contract with the Defendant-Appellee, John C. Bradley, d/b/a J.C. Bradley Construction Co., to make extensive repairs and remodeling of their home and to construct a three-car garage with an overhead apartment. Bradley proceeded with the construction work and submitted bills to the Plaintiffs periodically for materials and labor plus 15% for profit and overhead. These bills were paid by the Plaintiffs up to the amount of $37,610. In December the Defendant submitted the Plaintiffs an additional bill for $16,000, which Plaintiffs refused to pay on the basis the total construction cost was not to exceed $40,000.

Because of Wiltchers' refusal to pay the additional $16,000, Bradley declined to do further work on the project and that precipitated this litigation.

Wiltchers employed the services of another contractor to complete the construction and also to rework and repair faulty construction by Bradley. The Wiltchers filed suit in the chancery court alleging Bradley had agreed to do the construction work on a cost-plus 12% basis but not to exceed $40,000. They alleged that, as a result of Bradley's breach of the contract and faulty workmanship, they had been forced to make expenditures of $41,630.90, in addition to the sums they had already paid to Bradley, to have the construction completed and to repair Bradley's faulty workmanship. They also alleged they had suffered additional damages such as physical discomfort, inconvenience and additional living expenses resulting from Bradley's breach of contract. They sought total damages in the amount of $91,631.90.

Bradley, for answer, admitted he contracted to do the construction on a cost-plus basis but denied the cost of construction was not to exceed $40,000. He also said the amount he was to receive for overhead and profit was 15% instead of 12%. By way of cross claim Bradley sued the Wiltchers for the sum of $16,000 for labor and materials furnished on the project prior to his termination of construction. He also sought 15% for profit and overhead expenses and prejudgment interest.

For answer to the cross claim the Wiltchers, among other defenses, said the contract between the parties exceeded $50,000 and Bradley was in violation of T.C.A. § 62–6–101, et seq., in that he did not have a contractor's license as required by the statute.

Before the case was set for trial three furnishers of materials to Bradley filed suit against him for the cost of the materials and against the Wiltchers to enforce mechanics' liens against the property pursuant to T.C.A. § 66–11–101, et seq. By agreement of the parties these cases were consolidated with the original suit. The parties also stipulated the materialmen were entitled to a judgment against Bradley and a lien on the property in the following amounts: Witt Building Materials Company, Inc., $5,433.32; American Limestone

Company, $1,972.05; Tate Window and Door, $2,128.17.

Upon the trial of the case the chancellor found the furnishers of materials were entitled to a judgment and liens on the property in the stipulated amounts. He found the construction contract between the parties was on a cost-plus basis but the total cost of construction was not limited to $40,000 as contended by Wiltchers, but was an open-ended contract. He further found the percentage for overhead and profit was 12% rather than 15% as contended by Bradley.

He awarded Bradley a recovery on his counter claim against the Wiltchers of $16,000. He then allowed the Wiltchers claims against Bradley as follows: (1) $9,533.54 for the total amount of the three mechanic's liens; (2) $6,138 for the cost of repairing defective work done by Bradley; and (3) $1,123.06 as an overpayment on the 15% charge made by Bradley on the $37,435.23 previously paid by Wiltchers. This resulted in a net judgment of $794.60 against Bradley and in favor of Wiltchers. The court did not allow Wiltchers any recovery for inconvenience or other matters sued for.

In his determination of the case the chancellor found Bradley did not hold a contractor's license as provided by T.C.A. § 62–6–101, *et seq.*, but in so holding he found it made no difference as to the outcome of the case.

The Wiltchers have appealed, presenting the following issues for review: "I. Did the court err in finding that the failure of the counter-plaintiff, John C. Bradley, to hold a contractor's license immaterial to the outcome of the case? II. Did the court err in awarding damages to the unlicensed contractor without a showing of clear and convincing proof? III. Should plaintiffs have credit for the amount paid to the defendant for materials purchased from Tate Window and Door Company, Inc. but used for purposes other than the payment of this account?"

■ We first consider the Appellants' third issue. Although there was some testimony relating to this matter during the trial of the case, this issue was not presented to the chancellor and is raised for the first time on appeal, which cannot be done. See *Moran v. City of Knoxville*, 600 S.W.2d 725 (Tenn.App.1979) and cases cited therein.

This brings us to consideration of Appellants' other issues. The proof reveals that at one time Defendant Bradley was the sole stockholder of J.C. Bradley Construction Company, Inc., a Tennessee corporation. Also, the state board for licensing contractors issued a license to the corporation in January, 1983. However, the corporate charter had been revoked and Defendant Bradley held no such license at the time the contract was entered into and the work performed.

The landmark case in this jurisdiction holding that unlicensed contractors will be denied access to our courts is *Farmer v. Farmer*, 528 S.W.2d 539 (Tenn.1975). The *Farmer* case was followed by *Santi v. Crabb*, 574 S.W.2d 732 (Tenn.1978) to the same effect.

In the case of *Gene Taylor & Sons Plumbing Co., Inc. v. Corondolet Realty Trust*, 611 S.W.2d 572 (Tenn.1981) the court considered a suit by an unlicensed subcontractor against the prime contractor. Although it reaffirmed the doctrine as laid down in the *Farmer* and *Santi* cases, based on the facts in those cases, it recognized a distinction where the unlicensed contractor was dealing with a licensed professional in the same business.

In 1980 the state legislature changed the public policy of this state relating to unlicensed contractors. As pertinent here, T.C.A. § 62–6–103 provides as follows:

"Any unlicensed general contractor covered by the provisions of this chapter shall be permitted in a court of equity to recover *actual documented expenses only upon a showing of clear and convincing proof.*" (Emphasis ours.)

■ Although the cases of *Coleman v. Anderson*, 620 S.W.2d 77 (Tenn.1981);

*Chedester v. Phillips*, 640 S.W.2d 207 (Tenn.1982); and *Getter v. Shuptrine*, 655 S.W.2d 150 (Tenn.App.1983) all deal with the issue of the right of an unlicensed contractor to recover, the issues in those cases predated the existing statute and were not controlled by it. For this reason, the case at bar is controlled by the statute as it now exists. Also, since T.C.A. § 62–6–103(c) places a more onerous standard of proof upon an unlicensed contractor than on a licensed contractor, we find the chancellor was in error in holding the issue of licensing made no difference in the outcome of the case. This holding of the chancellor would, however, have been harmless had Bradley met the standard of proof required by the statute. Our review of the record reveals he did not.

The statute allows unlicensed contractors to recover only "actual documented expenses." Black's Law Dictionary 432 (5th Ed.1979) defines "document" as:

"An instrument on which is recorded, by means of letters, figures, or marks, the original, official, or legal form of something, which may be evidentially used. In this sense the term 'document' applies to writings; to words printed, lithographed, or photographed; to maps or plans; to seals, plates, or even stones on which inscriptions are cut or engraved. In the pleural, the deeds, agreements, title-papers, letters, receipts, and other written instruments used to prove a fact. As used as a verb, to support with documentary evidence or authorities."

"Documentary evidence" is defined as:

"Evidence derived from conventional symbols (such as letters) by which ideas are represented on material substances. Such evidence as is furnished by written instruments, inscriptions, documents of all kinds, and also any inanimate objects admissible for the purpose, as distinguished by 'oral' evidence, or that delivered by human beings viva voce." Black's at 433.

27B C.J.S. 970 Document (1959) states: "The word 'document' is defined as meaning anything bearing a legible or significant inscription or legend, that which conveys information, hence a written or printed instrument; anything that may be read as communicating an idea; some writing like a deed, a will, a letter, or an account rendered or stated; any matter expressed or described upon any substance by means of letters, figures, or marks, or by more than one of these means, intended to be used, or which may be used, for the purpose of recording that matter; and more specifically, an instrument upon which is recorded, by means of letters, figures, or marks, matter which may evidentially be used; an original or official paper relied upon as the basis, proof, or support of anything else."

■ In examining the record and the exhibits, we find no evidence of any documented expenses. There was not a single invoice, cancelled check, receipt or other document offered into evidence to substantiate any expenses of Bradley, nor were any ledger or journal sheets or other records of business dealings, as set forth in T.C.A. § 24–7–111 of the Uniform Business Records as Evidence Act, offered into evidence. The only evidence which was presented by the Defendant contractor as to his expenses was an itemized list of labor and materials prepared at the request of his attorney after this suit had been filed. In this regard, he testified as follows:

"Q. At my request did you sketch out an itemization of the labor and materials that you supplied on that job?

"A. Yes, sir.

"Q. Plus 15 per cent?

"A. Yes, sir.

"Q. And that's what you're asking for—

"A. (Interposing) Yes, sir.

"Q. (Continuing) as final payment for your work there?

"A. There's a few things like Richard's bill that I didn't know about at the time. I only found out about that just shortly ago.

"Q. That's Mr. Casteel?

"A. Yes. But basically, I mean, that's the core of the situation. Of course, there is interest on all of that, but that's my problem."

■ Even where "documented expenses" are shown, they are recoverable "only upon a showing of clear and convincing proof." "The 'clear and convincing evidence' standard is defined as 'that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.'" *Turner v. Lutz,* 685 S.W.2d 356 (Tex.Ct.App.1985).

The chancellor, in his memorandum opinion, found: "Defendant now says that he is owed some $20,222.55 without any detailed evidence supporting that claim.

"We think that defendant is entitled to some payment, but we are not impressed with the quality of the defendant's proof as to what defendant is entitled to. Based upon the evidence, we are just not convinced of defendant's right to recover beyond the extent of the final billing. We are convinced to the extent of $16,000 and feel that defendant, at most, has proved that amount."

It is obvious from the chancellor's memorandum opinion that he did not find the evidence supporting Bradley's cross claim documented or clear and convincing, as required by the statute.

The decree of the chancellor will be modified to disallow any recovery on the cross claim. To the extent the decree is not modified, it is affirmed. The case is remanded for the entry of a decree in keeping with this opinion. The cost of this appeal is taxed to the Appellee.

PARROTT, P.J., and WILLIAM RUSSELL, Special Justice, concur.