IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs, September 16, 2002

## THE STATE OF TENNESSEE, DEPARTMENT OF CHILDREN'S SERVICES, v. TLC

**Direct Appeal from the Juvenile Court for Hamilton County**
**No. 168,377     Hon. Suzanne Bailey, Judge**

**FILED OCTOBER 14, 2002**

**No. E2002-00699-COA-R3-CV**

---

The Trial Court terminated the mother's parental rights on statutory grounds. On appeal, we affirm the Trial Court's Judgment.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Juvenile Court Affirmed.**

HERSCHEL PICKENS FRANKS, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

Julie A. Hall, Chattanooga, Tennessee, for Appellant.

Paul G. Summers, Attorney General and Reporter, and Douglas Earl Dimond, Assistant Attorney General, Nashville, Tennessee, for Appellee.

### OPINION

In this action, the Trial Judge terminated the mother, TLC's parental rights to the child, JAC, and the mother has appealed.

JAC was born May 17, 1994, and was voluntarily placed by his mother, TLC, at Bethel Bible Village in July of 1999. At that time TLC was homeless, unable to properly care for her son, living in and out of motels, and at times sleeping in a car. On August 19, 1999, TLC was involved in an accident in which her boyfriend was killed, and she later pled guilty to charges of vehicular homicide. She was incarcerated until February 11, 2000, and received a sentence of eight years in the Department of Corrections, suspended with intensive probation. JAC came into State custody in September, 1999, and under the permanency plan developed in conjunction with the Department, TLC agreed to obtain and maintain safe housing, obtain a parenting assessment and

follow up with any recommended counseling, complete an alcohol and drug assessment, submit to drug and alcohol testing and treatment, and remain drug free. She also agreed to visit with the child for 4.3 hours per month after she was released from jail.

TLC remained free eight months after her release from jail, but her probation was revoked and she was re-incarcerated in November 2000, after twice testing positive for marijuana use. A department worker testified that TLC visited her son only one time at Bethel during the entire time she was free. According to the witness, Bethel Bible Village was less than a mile from the bus stop at Northgate Mall, and that she had offered TLC bus tickets. She further testified that she instructed TLC to contact Bethel if she had any problem, as they are ready to assist parents with visitation.

TLC testified she had not had regular contact with her son since 1999. She stated that she missed visitations with her son because she couldn't get out to Bethel due to the bus schedule. She testified that after she was back in prison she did write her son a letter a week from January to June, and then once a month after that.

She testified that she had not made arrangements to have the parenting assessment done under the plan, and gave various excuses for not calling son on the phone.

TLC paid no child support during the time she was out of jail, although she had a job and income. She testified that no one ever asked her to pay support, and she thought she was being allowed to save up money to get a home established to take her son. She did not know when she would be released, but anticipated serving at least another year on her eight year sentence. She conceded that her pattern had not really changed very much, and admitted that she could not give her son the stability he needs, and she could not offer any reason the Court should not terminated her rights, "other that aren't being selfish, because I just don't want him to."

A case worker testified that JAC is getting the permanency he needs, and responding well in a normal family environment, and that when he was placed with a foster family he bonded immediately with them, that he continues to receive counseling services, and doesn't want to talk about his mother.

The witness stated that she gave TLC the telephone numbers for arranging the parenting assessment, but she never made arrangements during the time she was out of jail, that TLC had a steady job and housing, and was meeting the other terms of her probation, except for failing two drug screens, but did not maintain contact with her son.

The Trial Court found by clear and convincing evidence that "Defendant made no reasonable efforts to provide a suitable home and demonstrated a lack of concern for the child to such a degree that it appears unlikely she will be able to provide a suitable home for the child at an early date, that there is little likelihood that said conditions will be remedied at an early age so that the child can be returned to the mother in the near future; that the continuation of the legal parent and

child relationship greatly diminishes the child's chances of early integration into a stable and permanent home; that the Defendant failed to comply in a substantial manner on the reasonable responsibilities of the Foster Car Plan; that the Defendant willfully abandoned the child for more than four (4) consecutive months next preceding the filing of the petition in this cause and it is therefore, for the best interest of the said child and the public that all of the parent rights of the Defendant to the said child be forever terminated. . . ."

Our review of a Trial Court sitting without a jury is *de novo* upon the record, with a presumption of correctness. Tenn. R. App. P. 13(d). *Alexander et al, v. Inman,* 974 S.W.2d 689, 692 (Tenn. 1998). The Trial Court's conclusions of law are subject to *de novo* review with no presumption of correctness. *Campbell v. Florida Stell Corp.*, 919 S.W.2d 26, 35 (Tenn. 1993).

A parent's right to care, custody and control of his or her child is not absolute, and may be terminated if justified by the State's proving by clear and convincing evidence of the statutory grounds for termination. *O'Daniel v. Messier*, 905 S.W.2d 182, 186 (Tenn. Ct. App. 1995). The standard for clear and convincing evidence has been defined as "that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Wiltcher v. Bradley*, 708 S.W.2d 407, 411 (Tenn. Ct. App. 1985). Statutory grounds for termination of parental rights are set forth in Tenn. Code Ann. §36-1-113 (2001). It well settled that termination of parental rights may be grounded upon the showing by clear and convincing evidence of the existence of any one of the statutory bases. *See In re C.W.W. et al.,* 37 S.W.2d 467, 473 (Tenn. Ct. app. 2000).

Tenn. Code Ann. §36-1-102(1)(A) defines "abandonment". Subsection (i) provides that "For a period of four (4) consecutive months immediately preceding the filing of a proceeding . . . to terminate the parental rights of the parent(s) . . . that the parent(s) . . . either have willfully failed to visit or have willfully failed to support or make reasonable payments toward the support of the child." Subsection (iv) applies to situations where the parent is incarcerated for all or part of the period prior to filing the petition: "A parent . . . is incarcerated at the time of the institution of an action or proceeding . . . or . . . has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and either has willfully failed to visit or has willfully failed to support or make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's . . . incarceration, or the parent . . . has engaged in conduct prior to incarceration which exhibits a wanton disregard for the welfare of the child." TLC argues that because the State did not allege subsection (iv), that the Court is in some way limited to proof of TLC's actions only during the four months immediately preceding the filing of the petition on May 29, 2001, when she was incarcerated, citing case authority for the proposition that under Tenn. R. Civ. P. 8.01 and 12.06, facts must be pleaded to state a claim for relief. Counsel misinterprets the statute which merely defines "abandonment" for the purposes of the adoption statute. The statute does not create a cause of action, since TLC was incarcerated during the four months immediately preceding the filing of the petition, subsection (iv) is applicable as the relative time period. Thus, the relevant time period is the four months preceding defendant's incarceration in November 2000, during which abandonment would be established by proving either

willfully failing to visit the child, willfully failing to make reasonable payments toward his support, or engaging in conduct that exhibited a wanton disregard for the child's welfare. The Court found by clear and convincing evidence that, based upon the visitation alone, TLC had abandoned the child. The Trial Court observed :

> You let this child sit for a period of months [in Bethel] while you were working, you did have income. You did have the ability to pay to visit this child, and you didn't.
>
> You weren't demonstrating then that you prioritized this child in your life. Instead you were prioritizing being either co-dependent on somebody else for your existence, following their way of life, but you didn't do what you could have done.
> . . .
> So on the grounds of failure to follow through on her foster care plan, as well as abandonment on the grounds of lack of visitation, and lack of attempt to be reunited with this child, I believe strongly also the remainder of the evidence that it is indeed in the child's best interest to be presented the opportunity to continue where he is, or at least for a permanent home.

This Court has previously rejected the argument that self-created legal problems, such as incarceration for drug offenses can excuse a parent's failure to visit his or her child. *In re M.C.G.,* No. 01A01-9809-JV00461, WL 332729; *In re Shipley*, No. 03A01-9611-JV-00369, 1997 WL 596281.

A parent with a criminal history for drug offenses, who fails drug screens and who violates parole and does not visit their child during the periods they are in and out of prison, presents clear and convincing evidence of abandonment, as well as wanton disregard for the welfare of the child. *State v. J.S., et al*, 2001 Tenn. App. Lexis 796, No. M2000-03212-COA-R3-JV; *G.M.C. et al. v. A.V.I.,* 2000 WL 2295686, No. E2000-00134-COA-R3-CV; *In re C.W.W. et al*, 37 S.W.2d 467, 473 (Tenn. Ct. app. 2000). *Also see State v. J.S.,* 2001 Tenn. App. Lexis 796, No. M2000-3212, COA-R3-JV.; *State v. Grant*, 2002 Tenn. App. Lexis 158, No. W2001-01934-COA-R3-JV. The record establishes by clear and convincing evidence as found by the Trial Court that TLC abandoned the child and failed to follow through on other responsibilities in the foster care plan. *See State v. Frazier*, 2002 Tenn. App. Lexis 138, W2001-01935-COA-R3-JV.

After determining that grounds exist to terminate parental rights, the trial judge is required to consider the statutory criteria to determine whether termination is in the child's best interest. *See* Tenn. Code Ann. §36-1-113(i). These factors are not exhaustive, and at least seven of the nine factors in the statute are implicated in this case. *See also, G.M.C. et al v. A.V.I.*, 2000 WL 1195686, No. E2000-00134-COA-R3-CV. Expecting a young child to wait years on an incarcerated parent to remedy his or her problems is neither reasonable, nor in the best interest of the child. *In re Shipley*, No. 03A01-9611-JV-00369, 1997 WL 596281; *State v. T.K.*, 2002 WL 1115730 (Tenn. Ct. App. ES).

The evidence established that JAC is bonding well and is now happy, outgoing and not emotionally detached. On the other hand, TLC could give no reason for the Court to consider other than her being "selfish" and "she did want him to" to deny termination. The Trial Court found the child was adoptable, and he has hope for a real life with a real family. Continuing the parental relationship would destroy any hope he has for a real future in the Trial Court's opinion. We hold there was clear and convincing evidence that the child's best interest is served by termination of TLC's parental rights.

The cost of the appeal is assessed to TLC, and the cause remanded.


_____
HERSCHEL PICKENS FRANKS, J.