IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 17, 2003 Session


STATE OF TENNESSEE, DEPARTMENT OF
CHILDREN'S SERVICES v. A.W.S. and E.S.
In re: R.T.S.


Appeal from the Juvenile Court for Blount County
No. 8635     William T. Denton, Judge


FILED JANUARY 16, 2004


No. E2002-02227-COA-R3-JV

---


The State of Tennessee, Department of Children's Services ("DCS") filed a petition seeking to terminate the parental rights of A.W.S. ("Mother") and E.S. ("Father"), the biological parents of the minor child, R.T.S. ("the Child"). The Juvenile Court granted DCS' petition to terminate Mother's and Father's parental rights. Both Mother and Father appeal. We affirm.


**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed;
Case Remanded.**


D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and HERSCHEL P. FRANKS, J., joined.


Jon A. Anderson, Maryville, Tennessee, for the Appellant, A.W.S.

Wm. Lee Gribble, II, Maryville, Tennessee, for the Appellant, E.S.

Paul G. Summers and John H. Bledsoe, Nashville, Tennessee, for the Appellee, State of Tennessee, Department of Children's Services.

## OPINION

## Background

This case involves the termination of the parental rights of Mother and Father, biological parents of the Child. In December of 1998, DCS filed a Petition for Temporary Custody of the Child, who then was less than six-weeks old. The petition alleged that the Child weighed four ounces less than at birth and that the "newborn infant is suffering neglect due to the parents' lack of parenting skills." A DCS caseworker stated that the Child's "skin was hanging on his bones. . . . He had very little subcutaneous flesh under his skin. He had big, red circles under his eyes. His fingers, the palms of his hands, the bottoms of his feet were bright, cherry red. He was very, very thin." The Petition for Temporary Custody was granted and the Child was placed with his maternal grandparents.

Mother was unmarried when the Child was born. However, no one contests that Father is the Child's biological father. Mother and Father were married shortly after the Child was removed from their custody. At the time the Child came into DCS custody, Mother was living at a shelter for battered women and Father was living in a hotel.

A permanency plan[1] ("Plan") was created with a stated goal of returning the Child to his parents. The Plan required Mother and Father to do such things as attend marital counseling on a regular basis, maintain employment, maintain a residence with rent and utilities paid on time for a minimum of six months, and provide verification of income to the Court as required by Court order. The Plan also provided that either Mother or Father needed to obtain a driver's license in order to be able legally to use the transportation they had available to them. Mother and Father also were to attend parenting classes.

Since the Child came into DCS custody, Mother has been in a battered women's shelter twice. She also has moved back in with her parents for very brief periods of time. At one point while she was in a shelter, Mother contacted DCS and told the caseworker that Father "often curses her and threatens to kill her because of the situation." Mother stated she was planning on getting a divorce and was in the process of getting an order of protection. Mother, however, returned to Father.

Mother and Father have moved several times since the Child came into DCS custody and have failed to keep DCS apprised of changes in address. At one point, DCS attempted to visit and learned that Mother and Father had moved owing rent and leaving no forwarding address. Mother and Father did live at one location for approximately seven months. They have lived without

---

[1]The original permanency plan is not in the record. However, the permanency plan was revised at least two times prior to DCS filing the petition to terminate parental rights and these revised plans are in the record. The Juvenile Court had before it the revised permanency plan and found that Mother and Father had failed to substantially comply with the plan.

electricity and water sometimes for a couple of months at a time. Mother and Father currently live in a trailer they claim to be making payments on. Mother stated they eventually plan on buying some land upon which to put the trailer. However, they still did not have utilities at the time.

Mother has held a job as a cashier at Wal-Mart for several weeks. Father works construction jobs and has done so for many years, but his work is not steady. Mother states Father earns "[a]nywhere from 12 to 13 an hour" when he works.

Mother and Father did attend parenting classes and obtained a certificate showing completion of the classes. They, however, did not attend marital counseling on a regular basis. Instead, they attended a couple of sessions and then claimed they were attending counseling, but they refused to provide DCS with any information regarding when, where, or with whom. In addition, neither Mother nor Father provided the Court with any verification of income, nor did they ever voluntarily pay any child support. Mother and Father have visited the Child sporadically, at times missing scheduled visitations for several months at a time.

After losing contact with both Mother and Father for a period of approximately four months, DCS filed a petition to terminate parental rights. The maternal grandparents have expressed a desire to adopt the Child.

After hearing testimony, the Juvenile Court found that Mother and Father had failed to comply with the Plan, as revised, by failing to maintain regular employment and stable housing and that neither Mother nor Father had obtained a driver's license. Mother and Father had not reported income as required by court order to allow the Court to determine their child support obligations. The Juvenile Court found that both Mother and Father failed to obligate themselves voluntarily to pay any child support and both failed to keep DCS apprised of changes in home addresses and employment. In addition, the Juvenile Court found that the parties had failed to attend anger management or substantial marital counseling as required in the Plan. Further, the Juvenile Court found that Mother and Father's visitation with the Child had been sporadic at best and that Mother had made multiple reports of physical abuse by Father. The Juvenile Court found that the Plan contained "bare bone obligations that could be accomplished within just a very few months," but despite the fact that Mother and Father had been given "over 3 and one-half years to substantially comply with [their] obligations set forth in the permanency plan . . . [they had] yet to make other than mediocre or minimal progress towards compliance."

The Juvenile Court also found:

That the child has been removed by order of this Court for a period of six (6) months; and the child has been placed with the maternal grandparents for over three years; that the conditions which led to his removal still persist; or other conditions persist which in all probability would cause the child to be subjected to further abuse and neglect and which, therefore, prevent the child's return to the care of [Mother and Father]; there is little likelihood that these conditions will be remedied at an early

-3-

date so that this child can be returned to his parents in the near future; the continuation of the legal parent and child relationship greatly diminishes the child's chances of early integration into a stable and permanent home . . . .

The Juvenile Court entered an order August 27, 2002, terminating the parental rights of Mother and Father.  Mother and Father appeal to this Court.

### Discussion

Mother raises one broadly stated issue on appeal: whether the Juvenile Court erred in terminating her parental rights.  Father raises two issues on appeal: 1) whether the Juvenile Court erred in terminating his parental rights; and 2) whether Father waived his right to counsel.

The factual findings of the Juvenile Court are accorded a presumption of correctness, and we will not overturn those factual findings unless the evidence preponderates against them.  *See* Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001).  With respect to legal issues, our review is conducted "under a pure *de novo* standard of review, according no deference to the conclusions of law made by the lower courts."  *Southern Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

We will begin by considering whether Father waived his right to counsel.  Father's brief states:

The Court found that [Father] had "waived his right to counsel inasmuch as at least on 2 - and as much as 2 attorneys ha[d] been appointed to represent [him] and have withdrawn due to [his] failure to cooperate with appointed counsel."  This finding was reached without any evidentiary proceeding whatsoever.  No evidence supports this conclusion in the record, yet alone any clear and convincing evidence.

We disagree with Father.  The record includes orders wherein the Juvenile Court granted motions to withdraw made by two attorneys appointed to represent Father.  The second of these orders states that the motion is granted because of Father's "failure to communicate with his attorney."  Apparently, Father then chose to proceed pro se.  Father made his appearance at the termination hearing pro se and was allowed an opportunity to present his case and to cross-examine the witnesses.

"A defendant in a termination of parental rights case has no absolute right to be represented by counsel."  *Dep't of Children's Servs. v. Agbigor*, No. M2000-03214-COA-R3-JV, 2002 Tenn. App. LEXIS 807, at *13 (Tenn. Ct. App. Nov. 15, 2002), *appl. perm. appeal denied May 12, 2003*, (holding that defendant effectively waived his right to continued representation by failing to communicate with his attorney).  *See In re: K.D.D.*, No. M2000-01554-COA-R3-JV, 2001 Tenn. App. LEXIS 141 (Tenn. Ct. App. March 7, 2001), *no appl. perm. appeal filed*, (holding defendant

-4-

waived her right to appointed counsel by refusing to avail herself of the opportunities offered by the trial court).

Clear and convincing evidence in the record regarding this issue supports the finding that Father failed to communicate and cooperate with his appointed counsel. We find no error by the Juvenile Court in its holding that Father waived his right to counsel by his consistent refusal to cooperate with at least two attorneys appointed to represent him. To hold otherwise would grant a parent the absolute power to prevent forever a termination hearing from proceeding simply by refusing to cooperate with appointed counsel. While the Juvenile Court did what it could to see that Father was represented by counsel, it properly refused to have the Child remain in limbo and the termination hearing held hostage by Father through his failure to cooperate with appointed counsel. We find no error by the Juvenile Court as to this issue.

We next consider whether the Juvenile Court erred in terminating Mother's and Father's parental rights. In *Dep't of Children's Servs. v. D.G.S.L.* this Court discussed the relevant burden of proof in cases involving termination of parental rights. Specifically, we observed:

> It is well established that "parents have a fundamental right to the care, custody, and control of their children." *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988) (citing *Stanley v. Illinois*, 405 U.S. 645, 92 S. Ct. 1208, 31 L. Ed.2d 551 (1972)). "However, this right is not absolute and parental rights may be terminated if there is clear and convincing evidence justifying such termination under the applicable statute." *Id.* (citing *Santosky v. Kramer*, 455 U.S. 745, 102 S. Ct. 1388, 71 L. Ed.2d 599 (1982)).
>
> Termination of parental or guardianship rights must be based upon a finding by the court that: (1) the grounds for termination of parental or guardianship rights have been established by clear and convincing evidence; and (2) termination of the parent's or guardian's rights is in the best interests of the child. Tenn. Code Ann. § 36-1-113(c). Before a parent's rights can be terminated, it must be shown that the parent is unfit or substantial harm to the child will result if parental rights are not terminated. *In re Swanson,* 2 S.W.3d 180, 188 (Tenn. 1999); *In re M.W.A., Jr.,* 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). Similarly, before the court may inquire as to whether termination of parental rights is in the best interests of the child, the court must first determine that the grounds for termination have been established by clear and convincing evidence. Tenn. Code Ann. § 36-1-113(c). This Court discussed the "clear and convincing evidence" standard in *O'Daniel v. Messier,* 905 S.W.2d 182 (Tenn. Ct. App. 1995), as follows:

The "clear and convincing evidence" standard defies precise definition. *Majors v. Smith,* 776 S.W.2d 538, 540 (Tenn. Ct. App. 1989). While it is more exacting than the preponderance of the evidence standard, *Santosky v. Kramer,* 455 U.S. at 766, 102 S. Ct. at 1401; *Rentenbach Eng'g Co. v. General Realty Ltd.,* 707 S.W.2d 524, 527 (Tenn. Ct. App. 1985), it does not require such certainty as the beyond a reasonable doubt standard. *Brandon v. Wright,* 838 S.W.2d 532, 536 (Tenn. Ct. App. 1992); *State v. Groves,* 735 S.W.2d 843, 846 (Tenn. Crim. App. 1987).

Clear and convincing evidence eliminates any serious or substantial doubt concerning the correctness of the conclusions to be drawn from the evidence. *See Hodges v. S. C. Toof & Co.,* 833 S.W.2d 896, 901 n. 3 (Tenn. 1992). It should produce in the fact-finder's mind a firm belief or conviction with regard to the truth of the allegations sought to be established. *In re Estate of Armstrong*, 859 S.W.2d 323, 328 (Tenn. Ct. App. 1993); *Brandon v. Wright,* 838 S.W.2d at 536; *Wiltcher v. Bradley,* 708 S.W.2d 407, 411 (Tenn. Ct. App. 1985).…

*Dep't of Children's Servs. v. D.G.S.L.*, No. E2001-00742-COA-R3-JV, 2001 Tenn. App. LEXIS 941, at \*\*16-18 (Tenn. Ct. App. Dec. 28, 2001), *no appl. perm. appeal filed*. Clear and convincing evidence supporting any single ground will support a termination order. *See In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).

Termination of parental rights may be based upon a number of statutory grounds. In this case, the two grounds upon which the Juvenile Court based its ruling are:

(2)  There has been substantial noncompliance by the parent or guardian with the statement of responsibilities in a permanency plan or a plan of care pursuant to the provisions of title 37, chapter 2, part 4; [and]

(3)(A) The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:

(I) The conditions which led to the child's removal or other conditions which in all reasonable probability would cause the child to be subjected to further abuse or neglect and which, therefore, prevent the child's safe return to the care of the parent(s) or guardian(s), still persist;

(ii) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent(s) or guardian(s) in the near future; and

(iii) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home.

Tenn. Code Ann. §§ 36-1-113(g)(2) and (g)(3) (Supp. 2003).

The Juvenile Court found there was clear and convincing evidence that both of these statutory grounds for termination of Mother's and Father's parental rights had been met.

The Juvenile Court found that Mother and Father had failed to comply substantially with the Plan by, among other things, failing to maintain regular employment and stable housing and that neither Mother nor Father had obtained a driver's license. Mother and Father had not reported income as required by court order to allow the Court to determine their child support obligations. The Juvenile Court found that both Mother and Father failed to voluntarily obligate themselves to pay any child support and both failed to keep DCS apprised of changes in home addresses and employment. In addition, the Juvenile Court found that the parties had failed to attend anger management or substantial marital counseling as required in the Plan. Further, the Juvenile Court found that Mother and Father's visitation with the Child had been sporadic at best and that Mother had made multiple reports of physical abuse by Father. The Juvenile Court found that the Plan contained "bare bone obligations that could be accomplished within just a very few months," but despite the fact that Mother and Father had been given "over 3 and one-half years to substantially comply with [their] obligations set forth in the permanency plan . . . [they had] yet to make other than mediocre or minimal progress towards compliance."

The Juvenile Court also found:

That the child has been removed by order of this Court for a period of six (6) months; and the child has been placed with the maternal grandparents for over three years; that the conditions which led to his removal still persist; or other conditions persist which in all probability would cause the child to be subjected to further abuse

-7-

and neglect and which, therefore, prevent the child's return to the care of [Mother and Father]; there is little likelihood that these conditions will be remedied at an early date so that this child can be returned to his parents in the near future; the continuation of the legal parent and child relationship greatly diminishes the child's chances of early integration into a stable and permanent home . . . .

The Juvenile Court heard the testimony of several witnesses, including the DCS case worker, Mother, and the Child's maternal grandfather. "Unlike this Court, the [Juvenile Court] observed the manner and demeanor of the witnesses and was in the best position to evaluate their credibility." *Union Planters Nat'l Bank v. Island Mgmt. Auth., Inc.*, 43 S.W.3d 498, 502 (Tenn. Ct. App. 2000). The trial court's determinations regarding credibility are accorded considerable deference by this Court. *Id.*; *Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 563 (Tenn. 2001). "'[A]ppellate courts will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary.'" *Wells v. Tennessee Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999).

We find the evidence in the record does not preponderate against any of the findings of the Juvenile Court. Based on our review of the record, including the facts detailed above, we do not believe the Juvenile Court committed any reversal error in arriving at its conclusion that clear and convincing evidence existed to terminate both Mother's and Father's parental rights pursuant to these two statutory grounds. Mother's and Father's last minute efforts cannot provide the basis for a conclusion that these statutory grounds have not been proven.

Having affirmed that at least one statutory ground for termination was proven by clear and convincing evidence, we next address the claim that it was not proven by clear and convincing evidence that termination of Mother's and Father's parental rights was in the best interests of the Child. Tenn. Code Ann. § 36-1-113(i) describes the standard for determining whether termination is in the best interests of the child in such cases:

> (i)     In determining whether termination of parental or guardianship rights is in the best interest of the child pursuant to this part, the court shall consider, but is not limited to, the following:
>
> (1)     Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
>
> (2)     Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

-8-

(3)     Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4)     Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5)     The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6)     Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7)     Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8)     Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9)     Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

Tenn. Code Ann. § 36-1-113(i) (Supp. 2003).

After considering all relevant statutory factors in light of the evidence presented at trial, we do not believe the Juvenile Court committed reversible error when it concluded that clear and convincing evidence established it was in the best interest of the Child to terminate both Mother's and Father's parental rights. We hold this issue is without merit.

Mother argues that the Juvenile Court "did none of the analysis that is required by the Opinions supporting termination of parental rights" and did "not announce the standard by which its decision was made." Father's brief also argues that the Juvenile Court's opinion makes findings "but fails to supported (sic) these findings by clear and convincing evidence." We are at a loss as

to why Mother and Father make these arguments. The Juvenile Court's August 27, 2002, Termination of Parental Rights and Final Decree of Guardianship order specifically states: "The Court has made specific findings in the transcript attached, . . . **by clear and convincing evidence**." The Juvenile Court did indeed make specific findings that were based on clear and convincing evidence. We cannot imagine what more Mother and Father expected the Juvenile Court to do, nor can we imagine what more the Juvenile Court could have done. The Juvenile Court properly made specific findings of fact by clear and convincing evidence resulting in its decision both that the grounds for termination had been met and that the termination was in the best interest of the Child. We affirm the termination of both Mother's and Father's parental rights.

## Conclusion

The judgment of the Juvenile Court is affirmed, and this cause is remanded to the Juvenile Court for such further proceedings as may be required, if any, consistent with this Opinion, and for collection of the costs below. The costs on appeal are assessed equally against the Appellants, A.W.S. and E.S., and their sureties.

_____
D. MICHAEL SWINEY, JUDGE