IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 4, 2016

**IN RE DELILAH G.**[1]

**Appeal from the Juvenile Court for Knox County**
**No. 145643   Timothy E. Irwin, Judge**

———————————————————

**No. E2016-01107-COA-R3-PT-FILED-FEBRUARY 22, 2017**

———————————————————

This is an appeal from an order terminating a mother's parental rights to her daughter, of whom the Department of Children's Services acquired custody following a referral of a drug exposed child and two referrals for medical maltreatment and nutritional neglect. The child's parents were later adjudicated to have committed severe abuse on the child. The Department subsequently petitioned to terminate the parental rights of both parents, and the court granted the petition on the ground of severe child abuse and after holding that termination of the parents' rights was in the best interest of the child.   After a thorough review of the record, we affirm the judgment of the trial court in all respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and ARNOLD B. GOLDIN, J., joined.

Gregory E. Bennett, Seymour, Tennessee, for the appellant, Sheena W.

Herbert H. Slattery, III, Attorney General and Reporter; and M. Cameron Himes, for the appellee, the Tennessee Department of Children's Services.

**OPINION**

Delilah G. was born in June of 2012 to Sheena W. ["Mother"] and Mar-Ques G. ["Father"].[2]  The Department of Children's Services ["DCS"] first became involved with Delilah at her birth, when DCS received a referral of a drug exposed infant, due to mother's use of marijuana during her pregnancy.  Mother agreed to undergo treatment for

---

[1] This Court has a policy of protecting the identity of children in parental termination cases by initializing the last names of the parties.

[2] Mar-Ques G. is not a party to this appeal.

substance abuse but failed to follow through, and the case was closed. In July of 2013, DCS received a referral based on medical maltreatment and nutritional neglect of Delilah; services were placed in the home, and the case was closed.

On February 4, 2014, DCS initiated a proceeding in the Knox County Juvenile Court pursuant to Tennessee Code Annotated section 37-1-129—130, seeking to have Delilah determined to be dependent and neglected as a result of an inability to gain weight during her life and a diagnosis of severe failure to thrive "due, in large part, to the parents' failure to comply with medical providers and by the parents providing inaccurate information regarding [Delilah's] symptoms and intake while at home." A Protective Custody Order was entered, and DCS was awarded custody. On April 29 an adjudicatory hearing was held, wherein Mother and Father stipulated that Delilah was dependent and neglected within the meaning of the statute "due to substance abuse issues for both parents"; the court, *inter alia*, continued custody with DCS, approved a permanency plan which had been developed on February 28, and set the severe abuse hearing for June 5.[3] On December 17, 2014, the court entered an order setting forth its ruling from June 5 hearing; pertinent to the issues in this appeal, the court stated:

> Based on all of the foregoing, the Court finds, by clear and convincing evidence, that the child, Delilah [G.], is the victim of Severe Abuse at the hands of her parents for their failure to provide sufficient calories to Delilah, failure to follow medical direction for Delilah, and failure to attend appointments as recommended by the child's medical providers; Delilah's subsequent failure to thrive; and the risk of developmental delay, brain damage or death to which the parents subjected Delilah. She is also dependent and neglected based on the foregoing, by clear and convincing evidence.

The court continued her custody with DCS; Mother and Father were ordered to comply with a permanency plan which had been ratified on April 29.[4]

DCS filed a petition to terminate both parents' rights to Delilah on June 9, 2015, alleging severe child abuse, substantial noncompliance with the permanency plan, and

---

[3] The order resulting from the April 29 hearing was entered on January 7, 2015.

[4] In accordance with the holding that Delilah had been severely abused, the order provided:

> 6. Pursuant to T.C.A. 37-1-166(g)(4), reasonable efforts with respect to [Father] and [Mother] shall not be required. Pursuant to T.C.A. 1-130(c) and T.C.A. 37-1-167, this child shall not be returned to the custody or residence of [Father] or [Mother] without a finding by this court, by clear and convincing evidence, that a threat to the child's safety no longer exists and that the child will be provided a safe home free from further brutality and abuse.

2

persistence of conditions. The court heard the matter over the course of four days: November 9, 2015, and February 25, March 7, and April 21, 2016. On May 24 the court entered an order terminating Mother's rights on the ground of severe child abuse and upon the holding that termination of her rights was in in Delilah's best interest; the court held that DCS had not sustained its burden of proof to establish persistence of conditions or non-compliance with the permanency plans. The court also found that it was in the best interest of Delilah that Mother's parental rights be terminated.

Mother appeals, articulating the following issues:

I. Did the trial court err in finding by clear and convincing evidence that the Mother had committed severe abuse by her knowing exposure of a child to abuse or neglect or knowingly failing to protect a child from abuse or neglect that was likely to cause serious bodily injury or death as defined by Tennessee Code Annotated, Sections 36-1-113(g)(4) and 37-1-102(b)(21)(A)(i)?

II. Did the trial court err in finding by clear and convincing evidence that termination of the parental rights of the Mother was in the best interest of the child as defined by Tennessee Code Annotated, Section 36-1-113(c)?

## DISCUSSION

### I. STANDARD OF REVIEW

Parents have a fundamental right to the care, custody, and control of their children. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *In re Adoption of A.M.H.*, 215 S.W.3d 793, 809 (Tenn. 2007). However, that right is not absolute and may be terminated in certain circumstances. *Santosky v. Kramer*, 455 U.S. 745, 753-54 (1982); *State Dep't of Children's Services v. C.H.K.,* 154 S.W3d 586, 589 (Tenn. Ct. App. 2004). The statutes on termination of parental rights provide the only authority for a court to terminate a parent's rights. *Osborn v. Marr*, 127 S.W.3d 737, 739 (Tenn. 2004). Thus, parental rights may be terminated only where a statutorily defined ground exists. Tenn. Code Ann. § 36-1-113(c)(1); *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002); *In re M.W.A.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). To support the termination of parental rights, only one ground need be proved, so long as it is proved by clear and convincing evidence. *In the Matter of D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003).

Because the decision to terminate parental rights affects fundamental constitutional rights and carries grave consequences, courts must apply a higher standard of proof when adjudicating termination cases. *Santosky*, 455 U.S. at 766-69. A court may terminate a person's parental rights only if (1) the existence of at least one statutory ground is proved by clear and convincing evidence and (2) it is shown, also by clear and

convincing evidence, that termination of the parent's rights is in the best interest of the child. Tenn. Code Ann. § 36-1-113(c); *In re Adoption of A.M.H.*, 215 S.W.3d at 808-09; *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). In light of the heightened standard of proof in these cases, a reviewing court must adapt the customary standard of review set forth by Tenn. R. App. P. 13(d). *In re M.J.B.*, 140 S.W.3d 643, 654 (Tenn. Ct. App. 2004). As to the court's findings of fact, our review is *de novo* with a presumption of correctness unless the evidence preponderates otherwise, in accordance with Tenn. R. App. P. 13(d). *Id.* We must then determine whether the facts, as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements necessary to terminate parental rights. *Id.*

Neither party appeals the trial court's dismissal of the grounds of substantial non-compliance with the permanency plan or persistence of conditions.[5] Accordingly, we proceed to review the sufficiency of the evidence to support the ground for termination.

## II. SEVERE ABUSE

With respect to the holding that Mother (and Father) committed severe child abuse against Delilah, the May 24 order stated:

> 1. After Delilah [G.] was born on June 4, 2012, the Department received a report of harm on June 6, 2012, that Delilah had been exposed to marijuana on multiple occasions during her pregnancy. The Department became involved with the family, the mother agreed to obtain substance abuse treatment, but the mother did not follow through. The case was closed as services required but refused.
>
> A little more than a year after the child's birth, the Department received a report of harm noting that the child was diagnosed with failure to thrive; that the family was offered services from Tennessee Early Intervention Services (TEIS) and the Help Us Grow Successfully (HUGS) program. Her weight was below the 1st percentile. The Department provided services to the family to assist in obtaining appropriate medical care for Delilah and ensuring that the instructions of the various medical providers were followed. While the Department was involved, Delilah began to gain weight. After it appeared that the parents had been successful in mastering the tasks necessary to maintain Delilah's health and weight, services were ended.

---

[5] While DCS argues that the evidence showed that Mother failed to comply with the permanency plan and that the conditions which led to Delilah's removal persisted, DCS does not present the dismissal of those grounds as an issue for our review in the manner required by Tenn. R. App. P. 13(a).

On February 4, 2014, the Department of Children's Services received another report of harm alleging the Delilah was again failing to thrive in the care of her parents, and that she was the victim of medical maltreatment at the hands of the parents.

On February 14, 2014, the Department of Children's Services acted to remove the child into the custody of the Department. She has remained there continuously since that date.

On June 5, 2014, the Court had a final hearing and the order stated as follows:

> The Court finds, by clear and convincing evidence, that the child, . . . is the victim of Severe Abuse at the hands of her parents for their failure to provide sufficient calories to Delilah, failure to follow medical direction for Delilah, and failure to attend appointments as recommended by the child's medical providers; Delilah's subsequent failure to thrive; and the risk of developmental delay, brain damage or death to which the parents subjected Delilah. She is also dependent and neglects based on the foregoing, by clear and convincing evidence.

The Final Order Finding [Delilah] to be Dependent and Neglected and Severely Abused by [Father] and [Mother], arising from the hearing on June 5, 2014, was admitted into evidence as a portion of Exhibit #2.

Tennessee Code Annotated section 36-1-113(g)(4) provides that a parent's right may be terminated where a prior court order found that the parent committed severe child abuse against the child who is the subject of the petition. Mother concedes that she did not appeal the finding of abuse; she argues that the order memorializing the June 5 proceedings was entered on December 17, *nunc pro tunc* to June 5, and "the record is silent as to whether or not there was any notice of entry given to Mother's attorney, or to Mother, which would have then provided her with timely notice that she might appeal the severe abuse finding."

As noted by DCS in its brief, Mother did not raise this argument before the trial court. Indeed, at the termination hearing, her counsel acknowledged the finding of severe abuse, stating that Mother "was not disputing that," but argued that the finding should be disregarded and DCS should "focus on all the positive things [Mother] has done."

Having failed to raise the issue in the trial court, it cannot be raised on appeal for the first time. See *Sutton v. Bledsoe*, 635 S.W.2d 379, 382 (Tenn. Ct. App. 1981); *In re Donte N.*, No. E2013-01617-COA-R3-CV, 2014 WL 201612, at *9 (Tenn. Ct. App. Jan.

5

17, 2014). Moreover, the record before us shows that the issue of severe abuse was fully litigated in the dependent and neglect action, thus the order entered December 17, 2014 is final and *res judicata* and cannot be relitigated in this proceeding. *See In re Heaven L.F.*, 311 S.W.3d 435, 439 (Tenn. Ct. App. 2010).

## III. BEST INTEREST

Once a ground for termination has been proven by clear and convincing evidence, the trial court must then determine whether it is in the best interest of the child for the parent's rights to be terminated, again using the clear and convincing evidence standard. *In re Valentine*, 79 S.W.3d at 546. The legislature has set out a list of factors at Tenn. Code Ann. § 36-1-113(i) for the courts to follow in determining the child's best interest.[6] The list of factors in the statute "is not exhaustive, and the statute does not require every factor to appear before a court can find that termination is in a child's best interest." *In re S.L.A.*, 223 S.W.3d 295, 301 (Tenn. Ct. App. 2006) (citing *Tenn. Dept. of Children's Svcs. v. T.S.W.*, No. M2001-01735-COA-R3-CV, 2002 WL 970434, at *3 (Tenn. Ct.

---

[6] The factors at Tenn. Code Ann. § 36-1-113(i) are:

> In determining whether termination of parental or guardianship rights is in the best interest of the child pursuant to this part, the court shall consider, but is not limited to, the following:
>
> (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
> (2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;
> (3) Whether the parent or guardian has maintained regular visitation or other contact with the child;
> (4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;
> (5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;
> (6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;
> (7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;
> (8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or
> (9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

App. May 10, 2002); *In re I.C.G.*, No. E2006-00746-COA-R3-PT, 2006 WL 3077510, at *4 (Tenn. Ct. App. Oct. 31, 2006)).

In holding that termination of Mother's parental rights was in Delilah's best interest, the court made the following findings as to the factors at Tennessee Code Annotated section 36-1-113(i):

2. As to the fifth best interest element, the effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition; neither [Father] nor [Mother] can provide for the child's medical needs. "[T]his child is medically fragile. . . . even though she she's not using the feeding tube – it's about to be removed -- she still can't stand the texture of food. It might take her two hours to eat. Who's going to have the time to do that while [the mother] is working? Who's going to have the time to sit down and make sure that she gains weight while you're working? And I think you're going to get [Mother's other child] back. How are you going to do that? I don't know that you can. I don't know if I could. But the track record I've got to go on is you had a month and a half to try to do it before the child was taken. And now without this heavy burden of this fragile-needs child, everything's okay. If I put that burden back on you, I don't think it would be." "That outweighs all the other factors."

3. Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household. The parents have both been found to have committed severe abuse against this child and that ground militates against both parents.

***

5. The Department of Children's Services has made reasonable efforts toward achieving permanency for this child.

6. Delilah is entitled to a safe, secure and loving home. Delilah, on the last hearing date, was 46 1/2 months old. She was 20 months old at the time she left the custody of her parents and was placed in the custody of the Department of Children's Services. She has been in the custody of the current foster parents for 21 months, longer than she was in the custody of her parents.

She has become integrated into the family of the foster parents and she is thriving in their care. The foster family has made significant sacrifices for Delilah, including the foster mother not working. Delilah still requires significant amounts of time and attention to ensure that she eats enough to continue to gain weight. Sometimes the foster mother has to leave the other family members and take Delilah into a separate room to finish a meal so there are no distractions. This foster family has done a remarkable job with Delilah and she has made substantial progress in their care.

The trial court made findings specific to factor (5) and concluded that "neither [Father] nor [Mother] can provide for the child's medical needs."[7] The court held factor (6) was established by the finding of severe abuse. The court also made numerous findings related to Delilah's history with her foster parents and the progress she has made in their care.

As we consider this issue we are mindful of the instruction in *White v. Moody*:

[A]scertaining a child's best interests in a termination proceeding is a fact-intensive inquiry requiring the courts to weigh the evidence regarding the statutory factors, as well as any other relevant factors, to determine whether irrevocably severing the relationship between the parent and the child is in

---

[7] In the oral ruling at the termination hearing, the court stated:

". . .this child is medically fragile. . . . even though she's not using the feeding tube – it's about to be removed – she still can't stand the texture of food. It might take her two hours to eat. Who's going to have the time to do that while you're working? Who's going to have the time to sit down and make sure that she gains weight while you're working? . . . I don't know that you can. . . .

But the track record I've got to go on is you had a month-and-a-half to try to do it before the child was taken. And now without the burden of this fragile-needs child, everything's okay. If I put that burden back on you, I don't think it would be. . . .
. . . look at the fifth ground, the effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition. Focus on the words "medical condition."

No matter which way this Court comes out, it's a cruel result. It's a cruel result if I don't give the child - - it's a cruel result if I don't terminate the mother's parental rights to the foster parents who have done so well. It's a cruel result to the parent if I do terminate because she has made so much – gained so much ground.

Can she handle this child's medical condition? I'm clearly convinced she cannot. That outweighs all of the other factors. The Court clearly and convincingly finds that the child was a victim of severe abuse, and the mother, because of the fragility – if this was a normal child, I would have no hesitation sending her back to mother right now. But this child is not and needs the special care that she's been receiving in the foster home, which I don't think the mother is capable of duplicating right now, and I don't think the father has the ability to help. . . .

the child's best interests. The child's best interests must be viewed from the child's, rather than the parent's, perspective.

171 S.W.3d 187, 193-94 (Tenn. Ct. App. 2004) (internal citations and footnote omitted). While Mother argues that the evidence does not support the holding that termination of her rights was in Delilah's best interest, the evidence she cites focuses on her progress rather than Delilah's best interest. This was clearly a difficult decision for the trial court, which rightly resolved the case by putting Delilah's needs foremost. Given those needs, which are not disputed by Mother, the evidence clearly and convincingly supports the holding that termination of Mother's rights is in Delilah's best interest.

## IV. CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

RICHARD H. DINKINS, JUDGE